UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Wayne SCHWANKE, Virgil
Ernest Huggins, Olen Collins,
Defendants-Appellants.

Nos. 77–1797, 77–1958 and 77–1959.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 26, 1979.

Decided April 5, 1979.

Leonard D. Munker, Federal Public Defender, Wichita, Kan. (Jim Jones, Sallisaw, Okl., for defendant-appellant Huggins, and Philip Warren Redwine, Norman, Okl., for defendant-appellant Collins, on briefs), for defendants-appellants.

Betty O. Williams, Asst. U. S. Atty., Muskogee, Okl. (Julian K. Fite, U. S. Atty. and John R. Osgood, Asst. U. S. Atty., Muskogee, Okl., on briefs), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Richard Wayne Schwanke (Schwanke), Virgil Ernest Huggins (Huggins) and Olen Collins (Collins) appeal their jury convictions of destroying a building by use of an explosive in violation of 18 U.S.C.A. § 844(i) [1] and conspiracy in violation of 18 U.S.C.A. § 371.

Schwanke was charged in a two-count indictment filed June 14, 1977. Count I charged Schwanke with maliciously damaging and destroying a building by use of an explosive, the building "then being used for commercial business purposes, at least one of said businesses being actively engaged in

---

1. § 844(i) provides in part:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce . . . shall be imprisoned . . . or fined . . .; and if personal injury results shall be imprisoned for . . . ;

or affecting interstate commerce," and that "as a result of said explosion at least one person received and sustained physical injury" in violation of § 844(i). Count II charged Schwanke, together with Collins, Huggins, and one Elmer Brown, Jr., with conspiracy to destroy the building. Huggins, Collins and Brown were jointly charged in a similarly drafted two-count indictment filed the same day.

Schwanke proceeded to trial on July 6, 1977. The Government established that: Huggins owned the building in question which was located in Muldrow, Oklahoma; the building carried a substantial mortgage; Huggins had acquired insurance on the building in excess of the mortgage; the building and its contents were destroyed on March 12, 1977; a cafe located in the building purchased food items from Arkansas; Schwanke was picked up by Vickie Lynn Keith shortly after the explosion and fire which destroyed the building and Schwanke was cut burned and bleeding and appeared to be in shock; Schwanke told Keith that: he and a friend had been paid $100 to blow up a building, he did not want to go to a hospital, he wanted to be dropped off at a party's house to collect the $100, and that he had been supplied the dynamite used in the explosion by the party who was to pay him the $100; Shelley Renee Behunin, Keith's sister, related that she was with Keith when they picked up Schwanke and that he was badly injured and bleeding; Behunin identified Schwanke, known to her as "Rick"; artifacts taken from the explosion contained "chemical particles or the presence of nitroglycerin, nitroglycal and sulphur, and that these are ingredients found in dynamite."

At the conclusion of the Government's case in chief, Schwanke moved for judgment of acquittal which was denied by the court. Schwanke thereafter waived his opening statement, presented no evidence, and rested. The jury found Schwanke guilty as charged in both counts. He was thereafter sentenced under the Federal Youth Corrections Act, § 5010(b).

Following Schwanke's conviction, Huggins, Collins and Brown were tried on August 22, 1977. As a result of the joint trial, Brown was acquitted and Huggins and Collins were convicted on both counts. The government established its case against Huggins and Collins along the same lines it had proceeded against Schwanke but, in addition, the Government established that: prior to the destruction of the building, Huggins conferred with Collins, who lived in Indiana, by long distance telephone; in April, 1977, Collins related to two undercover agents that he had just completed a "job," describing in detail the Huggins' property; one John Conley, an inmate from Cummins Prison related that in early 1977 Huggins had called him and asked him to burn a building. Schwanke was also called to testify. His testimony, however, was by and large limited to denying statements attributed to him by Keith and Behunin at the time they picked him up. At the conclusion of the Government's case, counsel for Huggins and Collins presented no evidence and rested.

*Schwanke*

Schwanke contends: (1) the Government failed to establish and sustain jurisdiction for a criminal violation under § 844(i); (2) Congress did not contemplate increasing the penalty for a § 844(i) violation when the only party injured was the indicted defendant standing trial; (3) the court erroneously denied his motion for a continuance; and (4) he was prejudiced by the denial of his request to subpoena a witness at the Government's expense.

(1).

Schwanke contends that the Government failed to establish and sustain jurisdiction for a criminal violation under § 844(i). As noted, *supra*, inherent within a § 844(i) violation is the destruction or damage, or attempt, to "any building . . . or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

It is undisputed that Huggins' building was located in Muldrow, Oklahoma, and that one of his tenants, Vernon Galloway, operated a cafe, during the course of which he purchased candy, gum and vegetables from Arkansas. Schwanke does not attack or rebut this evidence. Rather, he argues that "under § 844(i) the nexus establishing or affecting interstate commerce must be a person engaged in organized crime to avoid the implication that Congress was not invading traditional state criminal jurisdiction." [Appellant's Brief, p. 18.]

We do not accept Schwanke's construction of § 844(i). We do not find anything in the legislative history of the statute supportive of his contention. Congress has the power to punish the unlawful use of explosives under the Commerce Clause even though the effect on interstate commerce may be *de minimis.* *United States v. Sweet,* 548 F.2d 198 (7th Cir. 1977), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977). In *Sweet, supra,* the court quoted extensively from the legislative history of § 844(i):

> Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our Nation. The absence of any effective State or local controls clearly attest to the urgent need to enact strengthened Federal regulation of explosives.
>
> \*   \*   \*   \*   \*   \*
>
> Its purpose is to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from explosives misuse and unsafe or insecure storage. It is also intended to assist the States effectively to regulate explosives distribution within their borders . . (P. 4013)
>
> \*   \*   \*   \*   \*   \*
>
> Section 844(i) proscribes the malicious damaging or destroying, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Attempts would also be covered.

> Since the term affecting [interstate or foreign] "commerce" represents "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," *NLRB v. Reliance Fuel Corp.,* 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963), this is a very broad provision covering substantially all business property. While this provision is broad, the committee believes that there is no question that it is a permissible exercise of Congress authority to regulate and to protect interstate and foreign commerce. (P. 4046)

548 F.2d, at p. 200.

We hold that the Government's evidence against Schwanke adequately established jurisdiction giving rise to a criminal violation under § 844(i).

### (2).

Schwanke contends that Congress did not contemplate enhancing the penalty under § 844(i) for the unlawful misuse of explosives where the only party injured is the indicted defendant standing trial. As noted, *supra,* Count I of the indictment returned against Schwanke alleged that "as a result of said explosion at least one person received and sustained physical injury."

During the course of Schwanke's trial the Government established, via uncontested testimony that: at the time Schwanke was picked up by Keith and Behunin he was cut, burned, bleeding, and in shock; Schwanke related to Keith and Behunin that he and a friend had blown up a building with dynamite; Schwanke related that he didn't get out of the building fast enough.

Schwanke does not attack the validity or sufficiency of this evidence. His sole argument is that Congress did not contemplate increasing the penalty for a § 844(i) violation when, as here, he was the only injured party. This is a somewhat unique provision. Neither party has presented helpful authority or analysis. We agree, however, that increasing the penalty was not intended in a case like this. Sections 844(d) and (f) which contain similar references to enhancement of penalty "if personal injury

results," refer to explosives used "to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building . . . ." This seems to us to contemplate prohibition of harm to another person and not self-injury. In the section involved here, § 844(i), as well as in § 844(f), it is stated that if death results from the use of explosives the death penalty may be given to the perpetrator. Thus we think there is a close analogy in the felony murder cases. In *People v. Ferlin*, 203 Cal. 587, 265 P. 230 (1928) an owner was found to have hired an individual to burn his building down for the insurance. In the fire the arsonist was accidentally burned to death. The building owner was convicted not only of arson and burning insured property, but of murder. The court declared that he could not have been guilty of murder:

> It would not be seriously contended that one accidently killing himself while engaged in the commission of a felony was guilty of murder. If the defendant herein is guilty of murder because of the accidental killing of his coconspirator, then it must follow that Skala was also guilty of murder, and, if he had recovered from his burns, that he would have been guilty of an attempt to commit murder.
>
> \* \* \* \* \* \*
>
> It cannot be said from the record in the instant case that defendant and deceased had a common design that deceased should accidentally kill himself. Such an event was not in furtherance of the conspiracy, but entirely opposed to it.

203 Cal. at 596–97, 265 P. at 234–35. Other cases have also distinguished between the situation where a criminal is killed during the perpetration of a felony because of actions he initiated, and where a victim or innocent party has been injured or killed unintentionally. *See People v. Antick*, 123 Cal.Rptr. 475, 539 P.2d 43 (1975); *People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442,

402 P.2d 130 (1965); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958).

The injury to the arsonist here could have been a cut upon the hand. We are not inclined to attribute to Congress an enhancement of the penalty where the only injury is to the criminal himself, or to his coconspirator. Criminal statutes are to be strictly construed, with ambiguities resolved in favor of lenity. *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973).

Nevertheless, we do not reverse because of this misconstruction of the statute. In this case reference to it in the indictment may be considered surplusage and disregarded. *See United States v. Archer*, 455 F.2d 193 (10th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972). There was no indication whatever that this error enhanced the penalty assessed by the judge, which was that Schwanke be sentenced under the Federal Youth Corrections Act.[2]

### (3).

■ Schwanke contends that he was prejudiced by the denial of his motion for a continuance. He does not elaborate on *how* he was prejudiced, save to observe that the total time between indictment and trial was "fourteen working days or twenty-two total days, including weekends and holidays" which was insufficient time allowed him in preparation for trial.

Schwanke acknowledges that the rule in this circuit, as enunciated in *United States v. Riebold*, 557 F.2d 697 (10th Cir. 1977), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977), and *United States v. Hill*, 526 F.2d 1019 (10th Cir. 1977), *cert. denied*, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976), is that a trial court's determination to deny a motion for continuance will not be set aside absent proof of a manifest injustice resulting from its denial.

---

2. As to Huggins and Collins, there should be a re-sentencing and we remand for this purpose. Collins received a 14-year sentence which must be corrected. Huggins was sentenced on a verdict finding the personal injury element and against what the trial judge obviously treated as a possible 20-year sentence range and his sentence should be re-entered also in light of the construction of the statute set out above.

Our review of the record in Schwanke's case leads us to conclude that the evidence against him was overwhelming, and, for the most part, uncontested. Schwanke did not testify and he presented no evidence. Under all of the circumstances, we cannot set aside the trial court's denial of his motion for a continuance.

#### (4).

■ Schwanke contends that he was prejudiced by the denial of his pre-trial motion to subpoena one witness at Government expense. Prior to trial Schwanke requested authorization to subpoena a deputy sheriff from Kentucky for attendance at his Motion to Suppress hearing and trial at the Government's expense. In denying this Motion, the trial court noted:

> The defendant has filed a motion requesting the court to authorize him to subpoena a witness at government expense. The totality of the motion is that the defendant "requests the court to authorize him to subpoena the following witness at government expense for the

hearing on his motion to suppress and for the trial in the above styled case. The witnesses are: M.J.C. Whittaker, Deputy Sheriff, Swampton, Kentucky 41471." No reasons are given, and no brief is filed in support of the motion. It is clear on its face that the two conditions set forth in Rule 17(b) of the Federal Rules of Criminal Procedure have not been met. Indeed, neither of them has been met. Such a motion is addressed to the sound discretion of the trial court. The Tenth Circuit has recently stated:

> Clearly a defendant has the burden of making a 'satisfactory showing' to the court concerning his financial ability and the necessity of the witnesses to his defense. 522 F.2d 576, 578 (10th Cir. 1975).

The motion is denied.

[R., Vol. III, p. 024.]

We hold that the District Court did not err in denying the motion. We affirm as to appellant Schwanke. We remand for re-sentencing as to appellants Huggins and Collins.[3]

---

**3.** Judge Barrett does not agree with the views relative to the interpretation of § 844(i) insofar as it enhances the penalty "if personal injury results."

In my view, the language of the statute is plain and unambiguous and does not permit us to modify it. It could hardly be clearer. I am not prepared to "read" the legislative intent beyond the plain language. I do not see any analogy between the plain language of this statute and the so-called "felony-murder" decisions from California. In my view they simply do not relate. There is a very substantial difference, I submit, between *convicting* a co-conspirator on the theory of "vicarious liability" or the "felony-murder" doctrine of California with murder and enhancing the penalty for *any* injury to *any* person arising out of the intentional, malicious use of explosives. The term "if personal injury results" cannot be equated with the term "injured person" in those cases creating a cause of action against a tort-feasor. Likewise, the term "injury to person" has almost universally been applied in relation to an invasion of another person's rights which give rise to damage actions. *Stringer v. Board of Trustee, etc.*, 62 Mich.App. 696, 233 N.W.2d 698. A long line of cases refers to statutes, both civil and criminal in nature, where the term "injury occasioned to another" is clearly employed.

The legislative history does not aid us in the construction of the language we are concerned with, but it clearly imports a sense of frustration and urgency resulting from the "absence of any effective state or local controls" over the recurrent bombings and threats of bombings throughout the nation which attested to the urgency of the legislation. U.S. Code Cong. & Admin. News, 2, 1970, pp. 4007, 4013, Organized Crime Control Act, P.L. 91–452. The sense of urgency and *increased penalties* was spelled out in various sections of the Act. For example, a new penalty provision involves malicious damage or destruction to property owned, leased, used or possessed by the United States or real or personal property belonging to institutions and organizations receiving financial assistance from the Federal Government such as universities, hospitals and police stations. *See*: § 844(f) and U.S. Code Cong. & Admin. News, 2, 1970, p. 4014. Here, too, the plain and simple words "and if personal injury results" are likewise used without qualification. The Judiciary Committee's report succinctly notes: "Like section 844(d) and (f), section 844(i) provides for more severe penalties in cases where personal injury or death results, including the death penalty in the latter case." *See*: U.S. Code, etc. p. 4047.

Enhanced penalty provisions relating to reckless or malicious possession of destructive devices or explosives have been enacted by many

*Huggins and Collins*

Huggins and Collins contend that: (1) the court erred in allowing in evidence Schwanke's out-of-court statements; and (2) Schwanke's statements were not admissible under Rule 801(d)(2)(E), Federal Rules of Evidence.

(1).

■■■ Huggins and Collins contend that the court erred in admitting Schwanke's out-of-court statements. They rely on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) for the rule that the admission of a defendant's post-conspiracy confession implicating a co-defendant constitutes reversible error whenever the confessing defendant does not testify, thereby denying the accused his Sixth Amendment right of confrontation. We agree. However, such is not the case at hand.

Schwanke was called by the Government and he testified. Thereafter he was subjected to cross-examination by Huggins. Collins, for reasons not apparent in the record, opted not to cross-examine Schwanke. Under such circumstances, *Bruton, supra*, was not violated. In expounding on *Bruton, supra*, the Supreme Court, in *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) opined:

> It was clear in *Bruton* that the "confrontation" guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial*—that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-examined on the witness stand at trial. This was confirmed in *California v. Green*, 399 U.S. 149, [90 S.Ct. 1930, 26 L.Ed.2d 489], where we said

that "[v]iewed historically . . . there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.*, at 158, [90 S.Ct. 1930]. Moreover, "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.*, at 162, [90 S.Ct. 1930]. This is true, of course, even though the declarant's out-of-court statement is hearsay as to the defendant, so that its admission against him, in the absence of a cautionary instruction, would be reversible error under state law. The Constitution as construed in *Bruton*, in other words, is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for "full and effective" cross-examination.

402 U.S., at pp. 626–627, 91 S.Ct., at p. 1726.

Applying these standards to the case at bar, we hold that the admission of Schwanke's statements to Keith and Behunin was not violative of Huggins and Collins Sixth Amendment rights.

(2).

■■■ Huggins and Collins contend that Schwanke's statements were not admissible under Fed. Rules Evid. Rule 801(d)(2)(E), 28 U.S.C.A. We disagree. Under Rule 801(d)(2)(E) a statement is not hearsay and is therefore admissible if made "by a coconspirator of a party during the course and in furtherance of the conspiracy." At the time Schwanke was picked up he told Keith

state legislatures since 1970. The Congress was certainly not unaware of the fact that the only injured person might be the perpetrator. Schwanke did incur personal injuries as a result of the explosion. Accordingly, there can be no argument that "personal injury" did result.

On three different occasions, in three distinct provisions of the Act, the Congress used the language "if personal injury results" for penalty enhancement purposes without qualification. In my view, this language was intentionally used. It applies to any person unless we graft an exception to the legislative language. In view of the urgency of the Act and the alarm voiced by the Congress, I prefer to believe that it is no oversight that the language does not exclude injury to the perpetrator.

and Behunin that he needed help, he did not want to go to the hospital, and that he wanted to go to the home of the man who was going to pay him $100 for blowing up the building. Schwanke's comments that he did not want to go to the hospital and that he wanted to collect $100 for blowing up the building were made during the course of and in furtherance of the conspiracy. The conspiracy was yet in being. It could not have been completed, from Schwanke's view, until he had received the $100. The statements were thus admissible.

(3).

We have carefully reviewed the remaining allegations of error presented by Huggins and Collins. We hold they are individually and collectively without merit.

Affirmed in part. Remanded for resentencing of Huggins and Collins.