UNITED STATES of America,
Plaintiff-Appellee,

v.

Hector Louie ANDRINI,
Defendant-Appellant.

No. 81–1335.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided Aug. 27, 1982.

Stephen B. Sadowsky, Los Angeles, Cal., for defendant-appellant.

Janet L. Goldstein, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHOY, GOODWIN, and FARRIS, Circuit Judges.

CHOY, Circuit Judge:

On May 7, 1980, a deliberately set fire damaged an office building being constructed by Cove Development Company. The arsonist set the blaze using four gasoline-filled water jugs ignited by cigarettes and a pyrotechnic fuse. After a jury trial, Hector Andrini, an organizer for the Teamsters Union, was convicted for the malicious destruction of the building under 18 U.S.C. § 844(i) and sentenced to a term of 40 months under 18 U.S.C. § 4205(b)(2). His apparent motive was revenge for Cove Development's refusal to cease doing business with a cement company involved in a labor dispute with the Teamsters.

On appeal, Andrini argues that the nexus between the building and interstate commerce was not sufficient to satisfy 18 U.S.C. § 844(i), that the court erred in admitting testimony concerning his knowledge of starting fires, and that the court should have suppressed evidence obtained as a result of a warrantless search. Because we find none of Andrini's arguments persuasive, we affirm his conviction.

### I. The Interstate Nexus

Section 844(i), 18 U.S.C.,[1] proscribes the malicious damage or destruction, by means of an explosive, of any building or personal property either used *in* interstate commerce or *in any activity affecting* interstate commerce. We have previously addressed the breadth of the affecting-commerce language in § 844(i) only summarily. *See United States v. Keen*, 508 F.2d 986, 990 (9th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). The legislative history shows that Congress intended that it be construed broadly:

> Since the term "affecting [interstate or foreign] commerce" (in 844(i)) represents 'the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause,' *NLRB v. Reliance Fuel Corp.*, 371 U.S. 224 [83 S.Ct. 312, 9 L.Ed.2d 279] (1963), this is a very broad provision covering substantially all business property.

H.R.Rep.No.1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4046. The "used in" language seems to have been inserted only to make certain that the building or property has some relationship to an activity of com-

1. Section 844(i) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

mercial nature. *See United States v. Mennuti,* 639 F.2d 107, 109–10 (2d Cir. 1981).

Consistent with congressional intent, at least two courts of appeal have stated that even a *de minimis* effect on interstate commerce is within the coverage of § 844(i). *United States v. Schwanke,* 598 F.2d 575, 578 (10th Cir. 1979); *United States v. Sweet,* 548 F.2d 198, 202 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977). And other courts have uniformly construed § 844(i) broadly. It has been found sufficient that an illegal gambling casino served orange juice and coffee and was heated by fuel oil, all of which perforce were from out of state, *United States v. Barton,* 647 F.2d 224, 232 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); a cafe located in the building sold candy, gum, and vegetables from out of state, *United States v. Schwanke,* 598 F.2d at 578; a bookstore sold books that had traveled interstate; *United States v. Corbo,* 555 F.2d 1279, 1282 (5th Cir.), *cert. denied,* 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 287 (1977); a tavern served liquor originating out of state, *United States v. Sweet,* 548 F.2d at 200–02; and a commercial fishing boat shipped its catch interstate, *United States v. Keen,* 508 F.2d at 990. *Cf. Usery v. Lacy,* 628 F.2d 1226 (9th Cir. 1980) (use of material that has moved interstate enough to establish that business affects interstate commerce under Occupational Safety and Health Act). We have discovered only two cases in which circuit courts have not found § 844(i) jurisdiction, neither of which involved *commercial* property. *United States v. Mennuti,* 639 F.2d 107, 109–10 (2d Cir. 1981); *United States v. Monholland,* 607 F.2d 1311, 1315 (10th Cir. 1979).

■ Accordingly, we have no difficulty finding the jurisdictional nexus here. Cove Development had erected the building's frame and nailed down the plywood subroofing when the office building was deliberately burned. Materials from out of state, including windows, doors, cedar shingles and plywood, were stored at the site. These materials were the inventory of Cove Development, much like the orange juice, coffee, candy, and other items in the cases discussed above. We therefore hold that the construction of a commercial office building using out-of-state materials is a commercial activity affecting interstate commerce for the purpose of § 844(i).[2]

## II. Admitting Testimony

■ John Morse, a member of the same union local as Andrini, testified at trial that while on a camping trip shortly after the arson, Andrini demonstrated his familiarity with techniques for starting fires. In response to a comment that Andrini would never be able to start a campfire with the damp wood he had collected, he ignited the wood by twisting a roll of toilet paper and lighting the edges. He then told Morse that the best way to start a large fire was to fill a plastic bleach bottle with gasoline, puncture it, stuff in a rag, and ignite the rag.

Andrini argues that Morse's testimony was character evidence inadmissible under Federal Rules of Evidence 404(b) and 403. Because Andrini waived at trial "any objection to that part of the testimony relating to the starting of a bonfire by compressing toilet paper" (C.R. at 510–11), we need consider only the portion of the testimony concerning Andrini's "plastic bottle" statement. We review its admission under the abuse-of-discretion standard. *See United States v. Mahler,* 452 F.2d 547, 548 (9th Cir. 1971), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1517, 31 L.Ed.2d 801 (1972).

Rule 404(b) states that evidence of "other crimes, wrongs or acts is not admissible to

---

**2.** We need not reach the Government's argument that because the construction industry affects interstate commerce, the destruction of property under construction automatically satisfies § 844(i). There is, however, some support for the assertion. *See, e.g., NLRB v. International Union of Operating Engineers, Local* 571, 317 F.2d 638, 643 & n.5 (8th Cir. 1963) (taking judicial notice that construction industry affects interstate commerce under National Labor Relations Act). Andrini's argument that insufficient evidence was introduced to prove the materials came from out of state is without merit.

prove the character of a person in order to show that he acted in conformity therewith." The purpose underlying this rule seems to be that a person should be tried only for the crime allegedly committed and not for unsavory character in general.

At the outset, we doubt that Morse's testimony concerning the "plastic bottle" statement is evidence of an "act" under Rule 404(b). But we need not decide whether the rule applies, for even if it does, we would hold that the testimony would be admissible under the exception in the rule allowing the use of evidence of other crimes, wrongs, or acts to show *identity* as well as for other purposes.

Under the identity exception, the characteristics of both the act and the offense must be sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue. *See United States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978). In this case, both fire-starting devices used gasoline-filled plastic bottles which were punctured around the top and ignited by means of a wick inserted into one of the holes. The only significant difference is that Andrini commented that his device was to be thrown, whereas the jugs used in the arson were apparently stationary. The district court did not abuse its discretion by admitting the evidence.

■ Evidence properly admissible under Rule 404 must, nevertheless, undergo the probative-prejudice balancing required under Rule 403. *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979). The balancing of these interests is also committed to the district court's sound discretion. *United States v. Bettencourt*, 614 F.2d 214, 218 (9th Cir. 1980). Andrini's "plastic bottle" statement indicates that he possessed a special skill that was employed in the commission of the arson, and that was probative in identifying him as the guilty party. *See United States v. Barrett*, 539 F.2d 244, 248–49 (1st Cir. 1976) (familiarity with burglar alarms relevant where alarm bypass was distinctive feature of burglary); *United States v. Campanile*, 516 F.2d 288, 293 (2d Cir. 1975) (experience in fencing coins relevant in large coin theft). In claiming that admission of the evidence shifted the focus of the jury away from the crime charged and pictured him as a pyromaniac, Andrini has not shown sufficient prejudice to outweigh this probative value.

III. *The Search*

Finally, Andrini asserts that the district court should have suppressed evidence found in his pocket consisting of 12 feet of pyrotechnic fuse similar to that used in the arson. The fuse was discovered in a search incident to his arrest for being a felon in illegal possession of a firearm. According to Andrini, the discovery of the firearm occurred in a luggage search violative of the fourth amendment and thus no probable cause existed for his arrest.

■■ As a result of some confusion in room assignments, a bag belonging to Andrini was transferred to the room of another guest of the motel at which Andrini was staying shortly after the fire. There was no identification on the bag. The guest returned the bag to the front desk where, following routine motel procedure, the desk clerk opened the bag and discovered a gun inside. Also in compliance with routine procedure, the clerk turned the gun over to local police. Believing that Andrini was a felon in illegal possession of a firearm, the police arrested him. The search incident to the arrest followed.

Andrini claims that the opening of his bag by the clerk violated the fourth amendment because an officer of the Bureau of Alcohol, Tobacco and Firearms, who had recently begun surveillance of Andrini's room, was present. The well-established rule is that the fourth amendment applies to a private party's actions only if, in light of all the circumstances, the party must be regarded as an instrument or agent of the state. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971); *United States v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981). The officer did not instruct the motel clerk to open the

bag. To the contrary, he advised the clerk to follow routine motel procedure. The officer stayed approximately 10 feet away when the bag was opened and did not look inside the bag. The officer's failure to inform the clerk of his belief that the bag belonged to Andrini did not transform the clerk into an agent of the state. *See United States v. Walther*, 652 F.2d at 792. We therefore conclude that the clerk's opening of the bag did not come under the purview of the fourth amendment.

AFFIRMED.