UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert W. BLACK, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Clinton Jay BOGGS,
Defendant-Appellant.

Nos. 81–2800, 81–2801.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1982.

Decided July 15, 1982.

Rehearing Denied Aug. 31, 1982.

Certiorari Denied Nov. 29, 1982.
See 103 S.Ct. 463.

Frank Kimbrough, Wilks & Kimbrough, Fort Wayne, Ind., Bruce M. Frey, McLane & Frey, Marion, Ind., for defendants-appellants.

David H. Miller, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before BAUER, Circuit Judge, DAVIS,* Associate Judge, and COFFEY, Circuit Judge.

BAUER, Circuit Judge.

A jury convicted defendants-appellants Clinton Jay Boggs and Robert W. Black of mail fraud. Numerous issues are raised in their appeal, the most important of which is whether this Circuit should adopt a rule requiring federal prosecutors to articulate their reasons for refusing to stipulate to pretrial polygraph tests. We decline to establish such a rule and affirm appellants' convictions.

I

Clinton Jay Boggs, Robert W. Black, and Larry R. Williams operated several investment companies that solicited investors by mail. Upon receiving a reply from a potential investor, Black and Boggs would appear in person seeking money for various investments. During such appearances Black and Boggs would make oral and written representations designed to induce persons to invest in corporations owned or controlled by Black and Boggs. A large number of these representations probably seemed too good to be true, which turned out to be the case. In the end, many of the investors lost most or all of their funds because of their reliance on false or misleading representations by Black and Boggs.

On July 17, 1981, a federal grand jury indicted Black, Boggs, and Williams, charging them with nine counts of mail fraud in violation of 18 U.S.C. § 1341. Three counts were dismissed, but Black and Boggs ultimately were convicted of the remaining six counts. Williams was convicted of two counts. The trial court, however, granted Williams' motion for judgment of acquittal notwithstanding the verdict. Black and Boggs now appeal.

II

Before trial Black voluntarily submitted to a polygraph examination. The test indicated Black's lack of intent to defraud investors and, hence, his innocence. Black therefore notified the prosecution of the polygraph results and offered to take another test, to be administered by an examiner selected by the government. The prosecutor, however, declined the invitation without explanation. Black's polygraph evidence met a similar fate at trial; Judge Eschbach refused to admit it.

On appeal Black argues that under the United States Constitution a federal prosecutor's unexplained refusal to stipulate to a polygraph test cannot operate to exclude exculpatory polygraph evidence. More specifically, Black contends that the government's refusal violated his constitutional guarantees of due process and compulsory process. He also contends that these constitutional rights were infringed by the trial court's exclusion of his favorable polygraph results.

* The Honorable Oscar H. Davis, Associate Judge of the United States Court of Claims, is sitting by designation.

In essence Black urges us to establish guidelines which in certain instances would allow admission at trial of a federal defendant's exculpatory polygraph results. It is Black's position that such evidence is not only sufficiently reliable to warrant admission if certain pre-trial conditions are met, but is so reliable as to be of constitutional significance. He cites *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974), and *McMorris v. Israel*, 643 F.2d 458 (7th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982), in support of these assertions.

In *Stanislawski* the Wisconsin Supreme Court abrogated its blanket exclusion of polygraph results and set down criteria for admitting such evidence in criminal trials. 62 Wis.2d at 742–43, 216 N.W.2d at 14–15. The court carefully noted, however, that "withdrawing an unconditional rejection of polygraph evidence does not necessarily mean that polygraph evidence is to have an unconditioned admissibility." *Id.* at 741, 216 N.W.2d at 13. Although unwilling to approve the admissibility of polygraph examinations under all circumstances, the *Stanislawski* court believed some intermediate approach was appropriate.

The *Stanislawski* experiment was short-lived. In *State v. Dean*, 103 Wis.2d 228, 307 N.W.2d 628 (1981), the Wisconsin Supreme Court abandoned the *Stanislawski* conditions because they were "not operating satisfactorily to enhance the reliability of the polygraph evidence and to protect the integrity of the trial process as they were intended to do." *Id.* at 279, 307 N.W.2d at 653. The exhaustive analysis in *Dean* amply demonstrates that the scientific and legal communities remain deeply divided over the reliability and utility of polygraph tests in criminal cases. *See id.* at 234 n.2, 307 N.W.2d at 631 n.2. Wisconsin's negative experience with pre-trial polygraph stipulations persuades us that a *Stanislawski*-type rule presently would fare no better in the federal system. We therefore reject Black's suggestion that we adopt standards similar to those laid down in *Stanislawski*.

Black's reliance on *McMorris v. Israel*, 643 F.2d 458 (7th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982), is also misplaced. In *McMorris* we considered a constitutional challenge to Wisconsin's now-defunct *Stanislawski* rule. The crux of McMorris' argument was that the prosecutor's unexplained refusal to enter into a pretrial polygraph stipulation pursuant to *Stanislawski* denied McMorris due process by effectively excluding McMorris' exculpatory polygraph evidence.

Although we stated in *McMorris* that polygraph examinations *seemed* to have become more reliable since their initial rejection in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), we did not decide whether such evidence was sufficiently reliable for us to embrace a version of *Stanislawski*. 643 F.2d at 462. Rather, we simply indicated that the increased reliability of polygraphs was a valid state justification supporting Wisconsin's decision to admit polygraph results in criminal proceedings. Having recognized the evidentiary value of polygraphs, Wisconsin was bound to admit or exclude such evidence in a manner consistent with due process. We therefore held that granting prosecutors unfettered veto power over admissible, exculpatory evidence was constitutionally impermissible. We expressly noted, however, that we were not holding "that Wisconsin may not absolutely refuse to admit polygraph evidence...." 643 F.2d at 466. The Wisconsin Supreme Court, of course, opted for this latter approach in *Dean*.

█ It should be apparent, then, that *McMorris* was merely our response to Wisconsin's experiment with polygraph evidence; that decision reflected neither our opinion as to the value of such tests nor our willingness to establish a rule along the lines of *Stanislawski*. While the enhanced reliability of modern polygraph testing techniques may suffice for investigative purposes, we remain unconvinced that such evidence has become sufficiently reliable for us to substitute our judgment as to its admissibility for that of a district court in a given criminal trial. *Cf. United States v.*

*Bursten*, 560 F.2d 779, 785 (7th Cir. 1977). Accordingly, we reject Black's contention that *McMorris* stands for the proposition that polygraph evidence is so reliable as to be of constitutional importance.

Black next claims that the trial court erroneously excluded Black's favorable polygraph evidence. We have often observed that district courts have the discretion to admit polygraph evidence in proper cases. *See, e.g., McMorris v. Israel*, 643 F.2d at 462 n.9; *United States v. Rumell*, 642 F.2d 213, 215 (7th Cir. 1981); *United States v. Bursten*, 560 F.2d 779, 785 (7th Cir. 1977); *United States v. Sweet*, 548 F.2d 198, 203 (7th Cir.), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977); *United States v. Infelice*, 506 F.2d 1358, 1365 (7th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Penick*, 496 F.2d 1105, 1110 (7th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974); *United States v. Chastain*, 435 F.2d 686, 687 (7th Cir. 1970) (per curiam). "Only abuse of [this] discretion render[s] the exclusion erroneous." *United States v. Rumell*, 642 F.2d 213, 215 (7th Cir. 1981). Judge Eschbach was understandably skeptical of Black's polygraph results, particularly in light of the overwhelming evidence demonstrating Black's guilt. We find no abuse of discretion.

Finally, Black argues that his motion for judgment of acquittal should have been granted because several key witnesses failed to identify him as the person who accepted the investment money. This argument has no merit. As the government points out in its brief, on cross-examination Black admitted accepting investment money from the victims described in the counts in question.

### III

Boggs raises several issues in his appeal. He first asserts that insufficient evidence supports his conviction. We must take the view most favorable to the government and sustain the jury's verdict if it is supported by substantial evidence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The record is replete with evidence of Black's and Boggs' misrepresentations and failures to disclose material facts to investors. For example, appellants sold "guaranteed investment notes" to one customer but overlooked the minor detail that the notes were guaranteed by nothing. In selling memoranda of commercial paper for a corporation they controlled, Black and Boggs somehow forgot to mention to investors that the Indiana Securities and Exchange Commission had previously issued a cease and desist order to the corporation for such activities. Other timely memory lapses concerned appellants' failure to disclose to investors that one of their real estate companies owned no real estate for several years. Under the circumstances, Chief Justice Waite's observation seems particularly apropos: "Honesty of purpose prompts frankness of statement. Concealment is indicative of fraud." *Crosby v. Buchanan*, 90 U.S. (23 Wall.) 420, 457, 23 L.Ed. 138 (1875).

Although appellants attribute their problems to business failures, the jury reasonably could have concluded otherwise. Indeed, "no amount of honest belief that [a] corporate enterprise would eventually succeed can excuse the willful misrepresentations by which the investors' funds were obtained." *United States v. Painter*, 314 F.2d 939, 943 (4th Cir.), *cert. denied*, 374 U.S. 831, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963). *Accord, Pandolfo v. United States*, 286 F. 8, 13 (7th Cir. 1922), *cert. denied*, 261 U.S. 621, 43 S.Ct. 433, 67 L.Ed. 831 (1923). The evidence was more than sufficient.

In his second argument, Boggs contends that his motion for severance should have been granted because no evidence allegedly connected him with the companies described in count one of the indictment. The denial of a severance motion will not be disturbed on appeal absent abuse of discretion by the trial court. *United States v. Garza*, 664 F.2d 135, 142 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982); *United*

*States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Boggs fails to specify how he was prejudiced by the joint trial. Furthermore, Judge Eschbach instructed the jurors that they were to consider the evidence as to each defendant and each count separately. Under these circumstances, we cannot conclude that the district court abused its discretion in denying Boggs' motion.

Similarly, we find no abuse of discretion in the trial judge's refusal to grant Boggs' motion for a continuance. The only specific hardship Boggs asserts is that time limitations prevented his counsel from assembling 450 documents purportedly necessary for Boggs' defense. The record, however, demonstrates that Boggs had possession of these documents several months before trial and that his attorney knew of this potential evidence at least two weeks before trial. Accordingly, we cannot say Boggs lacked sufficient time to prepare an adequate defense.

Boggs' Speedy Trial Act contentions are also without merit. All of them turn on the trial court's refusal to grant Boggs a continuance. As we have already pointed out, a continuance was not warranted under the circumstances. Granting or denying a continuance under the Speedy Trial Act is a matter committed to the trial judge's sound discretion. *United States v. Aviles*, 623 F.2d 1192, 1196 (7th Cir. 1980). No abuse of discretion occurred.

Finally, Boggs contends that the district judge failed to give instructions which would have limited the jurors' consideration of certain evidence and defined good faith. Boggs is simply incorrect. Such instructions were given.

IV

For the reasons expressed in this opinion, appellants' convictions are

AFFIRMED.