**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Byron Steve MADISON and James L. Best, Defendants-Appellants.**

**Nos. 80–2118, 80–2119.**

United States Court of Appeals, Seventh Circuit.

Submitted May 11, 1982.

Decided Sept. 28, 1982.

Certiorari Denied Jan. 10, 1983. See 103 S.Ct. 754.

---

David E. Booth, Federal Public Defender, East St. Louis, Ill., for defendants-appellants.

Marsha L. Johnson, Asst. U. S. Atty., James R. Burgess, Jr., U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before POSNER, Circuit Judge, DAVIS,* Associate Judge, and COFFEY, Circuit Judge.

---

* The Honorable Oscar H. Davis, Associate Judge of the United States Court of Claims, is sitting by designation.

COFFEY, Circuit Judge.

This case represents an appeal from the defendants' convictions in the United States District Court for the Southern District of Illinois of conspiracy to kidnap, 18 U.S.C. § 371, kidnaping, 18 U.S.C. § 1201(a)(1), and transporting a stolen motor vehicle in interstate commerce, 18 U.S.C. § 2312. Affirmed.

The appellant James Best contends that the trial court erred in denying his motion to sever his case from that of appellant Madison. Best further contends that the trial court erred in denying his motion to suppress the statements he made to police officers because he alleges that he was forced to give the statements in violation of his fifth amendment right to remain silent. Finally, Best asserts the trial court erred in denying his motion to suppress his confession and challenges the government's calling only three of the five witnesses present at the time he gave his confession.

Appellant Byron Madison challenges his conviction and asserts that the trial court erred in allowing a government witness to testify that Best made the statement that "someone else" had held the gun Best was accused of using to threaten the kidnap victim, and that this ruling denied Madison his sixth amendment right to confrontation. Madison further asserts that the evidence introduced at trial was insufficient to establish his guilt beyond a reasonable doubt. Finally, Madison alleges that the trial court abused its discretion in using a presentence report that recited criminal offenses that he had allegedly participated in but which in fact had either been dropped or were pending.

At the trial of the defendants, witnesses testified that on the evening of April 8, 1980, Alana Fahland and Denise Johns left work at Stouffer's Riverfront Towers in downtown St. Louis, Missouri and went to Alana's car approximately two blocks away intending to drive around and talk during Alana's thirty minute lunch break. Both women entered the vehicle, with Alana in the driver's seat and Denise in the passenger seat. Each of these women testified that they observed two men, identified as the defendants Madison and Best, walking toward their car, causing each of them apprehension, anxiety and fear for their safety. At this time they locked the car doors. The defendants walked past the vehicle and stopped to talk behind the car. Next the defendants approached the car on the driver's side and one of them tapped on the window. Alana rolled down the window approximately four inches and asked the defendants what they wanted. Alana testified that one of the defendants held up a rolled up plastic bag and offered to sell them some "reefer." The other defendant asked the women if they had jumper cables and would they assist them (the defendants) in starting their automobile. The women declined both suggestions. At this moment Best thrust his hand through the open driver's window and pointed a gun at Denise and yelled "Don't move, I will shoot," and Madison ran to the other side of the car. Alana started rolling up the window and started the car, and Best began hitting her on the back of her head with the gun, shouting "open the door." Both women opened their doors and started to exit from the car. Best forced Alana back into the car while Denise exited from the passenger side and proceeded toward the street. Defendant Madison followed Denise, and ordered her to "Get in the car or I will shoot." Denise refused to return to the car and attempted to flag down a passing vehicle. Alana testified that at this point Madison gave up the pursuit of Denise, returned to the car and entered the back seat area.

Best, after demanding the car keys and receiving them, drove the stolen vehicle with the kidnap victim over various streets in St. Louis, crossing over the MacArthur Bridge, which spans the Mississippi River between the states of Missouri and Illinois. While crossing the bridge, Madison ordered Alana to turn her purse over to him and after she complied, and Madison, when unable to find any money, demanded she tell him where the money was located. Alana answered that she had no money on her

person and placed her hand on the door handle, in an attempt to escape. When Best, the driver, noticed Alana's hand on the door handle he said "Don't think about jumping out" and ordered Madison to lock all the doors. At this point, Best forced Alana's head downward between her knees resulting in her no longer being able to see the surroundings of the area she was passing through.

Next, as Madison ordered Alana to get into the back seat with him, he grabbed her left arm while pulling her through the opening between the bucket seats into the back seat. Once Alana was in the back seat, Madison forced her head onto his lap, unbuttoned her vest and shirt and placed his hand inside her shirt.

Best continued driving the stolen car into East St. Louis, Illinois, while Madison continued to molest Alana. At this point, Madison unzipped his pants and ordered Alana to commit oral sodomy upon him. Alana refused and continued to protest and object to Madison's advances.

After driving for a short period, Best stopped the car in the rear of a building and then proceeded into an adjacent yard, a more secluded area, and parked the car and departed therefrom. At this time, Madison again ordered Alana to commit an act of oral sodomy and Alana again refused, until Madison threatened her with a gun, stating "make your choice, this or this." In fear for her life, Alana complied, and then Madison proceeded to force Alana down onto the seat, removed her undergarments and "started having intercourse."

After a period of time, as Madison observed Best returning to the car, he directed Alana to put her clothes back on. Madison got into the front seat as Best approached the car, and at this time Best queried Madison what Alana was doing in the back seat and stated that she "looked hurt or something." Madison replied that nothing had happened and Best left. Madison put on a pair of gloves and drove the vehicle back out of the yard near the building onto the street. At this point, Madison exited the car and directed Alana, his kidnap/rape victim, to drive back to Missouri and tell the police she had been picked up, taken to East St. Louis and robbed. While Madison remained in East St. Louis, Alana drove her car from the Illinois side of the river back across the MacArthur Bridge to St. Louis. She returned to the same parking lot and was met by Denise and the police, who after taking statements began to conduct an investigation.

That same evening, while investigating the abduction and rape of Alana Fahland, one of the officers of the St. Louis Police Department observed through the window of an automobile parked in the Stouffer's parking lot several pillows reported stolen from a van earlier that evening. Believing that the automobile might belong to someone connected to the abduction of Alana Fahland, and because it contained what he believed was stolen property, the officer seized the car and had it towed to the police station as evidence. The officer checked the vehicle's registration and Best was identified as the owner of the vehicle, and when he (Best) appeared at the police station the following day to claim his car, he was put under arrest. Alana Fahland, the rape/kidnap victim, and Denise Johns were called to the police station to view a line-up and after each of the young ladies viewed the line-up independent of each other, each of them identified Best as being involved in the kidnapping. Thereafter, Best admitted his guilt in the kidnapping and told the officers that Madison was also involved. Byron Madison was arrested shortly thereafter.

The defendants were indicted for conspiracy to kidnap, kidnaping, and transporting a stolen vehicle across state lines. At the trial, the prosecution presented the testimony of Alana Fahland, Denise Johns and Detective Carl Clifton. Neither Madison nor Best testified nor presented any evidence. The jury rendered verdicts of guilty as to each defendant on all three counts.

## ISSUES PRESENTED

*Best*

1. Did the district court err in denying Best's motion to sever his case from that of appellant Madison?

2. Did the trial court err in denying Best's motion to suppress the statements made by Best to the police officers on the grounds that Best's statements were given in violation of his "fifth amendment right" to remain silent?

3. Did the trial court err in denying Best's motion to suppress his confession where the government called only three of the five witnesses present at the time Best gave his confession?

*Madison*

1. Was Madison deprived of his sixth amendment right of confrontation, as he contends in violation of the *Bruton* rule, when a government witness was permitted to answer "yes" when queried by Best's attorney as to whether Best told the witness "someone else" had the gun which was used to threaten the kidnap victim?

2. Was the evidence sufficient to support Madison's conviction?

3. Did the trial court abuse its discretion in the sentencing of Madison when it relied upon a presentence report reciting criminal offenses that he had allegedly participated in but which in fact had either been dropped or were pending?

*Best*

1. *Motion to Sever*

 Best argues that the district court erred and abused its discretion in denying his (Best's) pretrial motion to sever his case from Madison's and grant separate trials. It is Best's position that he was prejudiced by the trial court's denial of severance on the grounds that the respective defenses of the co-defendants were antagonistic and inconsistent with each other because each defendant claimed that he was innocent and that the other defendant was guilty. Best argues that denying his motion to sever resulted in prejudice to both defendants. "It [is] within the sound discretion of the trial judge as to whether the defendants should be tried together or severally ..." *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954), and the trial court's ruling on a motion to sever will be overturned on appeal only if the defend-

ant can clearly establish an abuse of discretion. *Id.* Since our review of the record reveals no abuse of discretion in the trial court's denial of Best's motion for severance, we hold this argument is without merit.

 "The general rule is that persons jointly indicted should be tried together, especially in conspiracy cases." *United States v. Edwards,* 488 F.2d 1154, 1160 (5th Cir. 1974). "If the indictment invites joint proof ... *prima facie* joinder is shown." *Haggard v. United States,* 369 F.2d 968, 974 (8th Cir. 1966), *cert. denied,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). The rules relating to joinder and severance "are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial *prejudice* to the right of the defendant to a fair trial." *United States v. Roselli,* 432 F.2d 879, 899 n.35 (9th Cir.), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1970). "A mere showing of some prejudice has usually been insufficient, for qualitatively it must be the most *compelling* prejudice against which the trial court will be unable to afford protection." *Edwards,* 488 F.2d at 1160 (emphasis in original). "The denial of a severance motion will not be disturbed on appeal absent abuse of discretion by the trial court," *United States v. Black,* 684 F.2d 481, 484 (7th Cir. 1982), "or plain error effecting substantial rights." *United States v. Isaacs,* 493 F.2d 1124, 1158 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974). Because "[t]he burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review," *Tillman v. United States,* 406 F.2d 930, 935 (5th Cir. 1969), and because our review of the record reveals no prejudice to Best or abuse of discretion by the trial court, we hold that the trial court's denial of Best's motion for severance was proper.

Best alleges that he was prejudiced by the denial of severance because his defense and the defense presented by co-defendant Madison were inconsistent with each other

in that each of the defendants accused the other of being the main perpetrator of the offense, as is often the case with co-defendants. However, Best fails to cite any case law in support of this allegation of error and our independent review of relevant case law reveals that:

"The mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another are insufficient grounds to require separate trials. To obtain a severance on the grounds of conflicting defenses, at the very least, it must be demonstrated that a conflict is so prejudicial that differences are irreconcilable, and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

*United States v. Ehrlichman*, 546 F.2d 910, 929 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977).

It should be pointed out that neither of the defendants took the witness stand nor offered the testimony of any other witness which tended to exculpate themselves and inculpate the other defendant. On the other hand, during the closing arguments, each defense counsel for the first time in the trial attempted to make the other defendant the main perpetrator of the crimes, but each counsel avoided saying that his respective defendant did not participate in some manner in the offenses alleged in the indictment. The evidence introduced at trial shows that Madison and Best acted in concert, with Best in the main driving the stolen vehicle and Madison restraining and molesting the kidnap victim in the back seat. The bare and unsupported allegations made by the defense counsel during closing arguments that it was the other defendant who was the instigator of the crime does not create a "conflict [which] is so prejudicial and . . . irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both [defendants] are guilty." Indeed, both defense counsels pointed out to the jury that nothing defense counsel said to the jury during the closing argument could be considered by the jury as evidence. Therefore, after a review of the transcript we hold that Madison's and Best's defenses did not create a conflict and the trial court did not abuse its discretion in denying Best's motion for severance.

## 2. *Best's Confession*

While investigating the kidnaping and rape of Alana Fahland, a police officer with the St. Louis Police Department discovered Best's automobile in the same parking lot from which Alana was abducted. Upon looking in the window and discovering that the automobile contained stolen property and believing that the owner of the automobile may have been involved in the kidnaping and rape of Alana Fahland, the officer seized the automobile and had it towed to the police department. The officer checked the vehicle's registration and determined Best to be its owner. On the following morning, Best appeared at the police station of his own volition and asked for the release of his automobile. As soon as Best identified himself to the police, he was placed under arrest and advised of his constitutional right to remain silent and to be represented by an attorney. Best declined to invoke these rights, stating "He didn't know anything about any cars being broken into or kidnaping or abduction. All he knew is the police had his car and he demanded it back." Best further told the police officer that his (Best's) automobile had been stolen in East St. Louis, Illinois and that he had reported this theft to the police in East St. Louis. The officer checked Best's story and it proved to be false. Best was again advised of his constitutional right to remain silent and his right to have an attorney present during questioning. Detective Clifton testified at the suppression hearing that:

"I advised him (Best) he would be charged with theft or the charge of stealing over a hundred and fifty dollars. Theft involving items from a Dodge van and also advised him of a charge of destruction of property in regard to another car on the parking lot. That's what he said he didn't want to make any comment to or any statement to."

When Best told the officers that he wished to remain silent on the destruction of property charge, the officers ceased all questioning on that charge. Best was then informed that he was going to be placed in a line-up to be viewed by the victim of the abduction and was told that he had the right to have an attorney present during the line-up. The defendant stated that he did not need an attorney and told the officers he wished to make a statement. Even though the officers advised Best of the seriousness of the charges, he confessed to them that he had participated in the abduction of Alana Fahland and admitted driving her (Alana's) car from St. Louis to East St. Louis, Illinois. Best was then placed in a line-up viewed by both Alana Fahland and Denise Johns, and was identified by each of the women as being one of the two kidnappers who had stolen the car and abducted Alana.

Best argues that he invoked his right to remain silent when he told police officers that he wished to remain silent regarding the charge of destruction of property. Best contends that the officers should have stopped questioning him upon his request to do so, and because he recites the interrogation continued after he requested that it stop, his confession was therefore obtained in violation of his *Miranda* rights and should have been suppressed. In support of his position, Best relies upon *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where the Supreme Court ruled that a defendant's statement was inadmissible under *Miranda* where the defendant had requested to remain silent and was nonetheless further questioned by police officers. Our thorough review of the transcript reveals that Best was fully advised of his right to remain silent at the time of his arrest and of his right to counsel, and the police halted their questioning on the destruction of property charge when Best stated he wished to remain silent on that charge. Thereafter, Best voluntarily waived his constitutional rights when, after the questioning stopped, upon his own initiative, he approached the officers and stated "I want to tell you something," and

admitted his participation in the abduction of Alana Fahland and driving the car from St. Louis to East St. Louis, Illinois. Because Best volunteered this confession to the officers the holding of *Edwards* does not apply to this case.

*Edwards* involved a situation where the defendant requested the presence of his attorney during questioning but the police disregarded this request and continued questioning the defendant without the presence of his attorney. *Edwards* does not control the instant case because in *Edwards* the police continued questioning the defendant after he invoked his right to remain silent, while here, Best told the officers that he wished to remain silent concerning the destruction of property charges, and he then thereafter voluntarily and freely, on his own initiative addressed the police officers stating, "I want to tell you something" and then admitted his role in the abduction of Alana Fahland. Clearly, as noted in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a voluntary statement by a defendant not in response to interrogation is admissible at trial and is not in violation of the defendant's fifth amendment rights. *Id.* at 478, 86 S.Ct. at 1630. It is also clear that after invoking his constitutional right to remain silent a defendant may subsequently voluntarily waive that right. *United States v. Boston,* 508 F.2d 1171, 1175 (2nd Cir. 1974). Therefore, in light of the fact the police did not question Best concerning the destruction of property charge after he had invoked his *Miranda* right to remain silent concerning this point, and since after the questioning stopped Best voluntarily told the officers "Wait a minute. I want to tell you something," and inculpated himself in the abduction and kidnaping of Alana Fahland, we agree with the trial court's ruling and hold that the defendant, James Best, freely and voluntarily waived his right to remain silent and therefore the statements given by Best were not in violation of his fifth amendment rights and were properly admissible at trial.

**1308**

### 3. Presence of Officers at Suppression Hearing

Best asserts that the trial court erred in refusing to suppress Best's confession on the grounds that two of the five police officers who were present at the taking of the confession were not called as witnesses at the suppression hearing. Best asserts that the government's failure to call these two officers prejudiced him because he was unable to prove that his confession was involuntary. Because Best has failed to cite any federal case law and merely cites one Illinois case, which we hold is not controlling, and because our independent research further fails to reveal any support for the proposition that all persons present during a confession be called as witnesses at the suppression hearing, and since our review of the record reveals that Best's confession was voluntarily given, we hold Best's contention is without merit. This is especially true in light of the fact that the testimony of the additional two officers would merely have been cumulative as the state need only introduce sufficient evidence to demonstrate to the court and/or jury that the confession was voluntarily given and "constitutionally antiseptic." *See generally Leach v. State,* 83 Wis.2d 199, 265 N.W.2d 495 (1978).

It is a well established rule that "the burden is on the movant to make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be suppressed." *United States v. Evans,* 572 F.2d 455, 486 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). It is only once the defendant establishes a basis for his motion to suppress that the burden shifts to the government to prove by a preponderance of the evidence that the statement was given voluntarily. *United States v. Williams,* 604 F.2d 1102, 1125 (8th Cir. 1979). Voluntariness is "a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973).

In the instant case, our review of the transcript of the suppression hearing reveals that the government presented independent evidence which established beyond a preponderance of the evidence that Best's confession was freely and voluntarily given. The government presented the testimony of three officers to show that Best was continually advised of his constitutional rights and that the officers discontinued their interrogation on the destruction of property charge when the defendant wished to remain silent on that charge. The government's witnesses testified that independent of any actions of the police officers, Best voluntarily approached the officers after he had invoked his *Miranda* rights on the charge of the destruction of property and told them (the officers) of his "participation in the abduction and he admitted to being present and driving the car with the lady [Alana Fahland] from St. Louis [Missouri] to East St. Louis, Illinois." Best failed to present any evidence demonstrating that his confession was anything but voluntary, nor was he prevented from subpoenaing witnesses or testifying on his own behalf on this point. We do not agree that Best was prejudiced by the lack of testimony of the two other officers who were present when Best gave his confession as we believe the additional testimony of these two officers would merely have been cumulative and the record does not uphold Best's contention. Therefore, when the government produces sufficient evidence through witnesses that a defendant's confession was given freely, voluntarily and knowingly, this court declines to adopt a rule requiring that the testimony be presented of all individuals present at the time a confession is given.

### Madison

### 1. Right to Confrontation

Madison asserts that his sixth amendment right to confront an accusatory witness was violated when a police officer testified that Best told him during a videotaped interview that he was not solely responsible for the kidnaping but that anoth-

er person involved in the kidnaping was armed. Specifically, Madison claims that during the cross-examination of Detective Clifton by Best's attorney, the following exchange took place:

Q. [Best's Attorney] He [Best] told you there was a gun involved in there?

A. [Detective Clifton] There was.

Q. Didn't he?

A. Yes, sir.

Q. He told you that he didn't have the gun also, didn't he?

A. That was his statement.

Q. He also said that somebody else did, didn't he?

A. Yes, sir.

It is Madison's position that this line of questioning by Best's attorney implicated Madison in the abduction and kidnaping of Alana Fahland and deprived Madison of his sixth amendment right of confrontation and cross-examination of his co-defendant, Best.

In support of his position, Madison relies upon *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), which states that the use of a non-testifying co-defendant's confession which names a second defendant violates the second defendant's right to confrontation. While Madison states the *Bruton* rule correctly, he fails to note that this court and other courts have approved of the use of confessions which refer to accomplices only in the most general terms (so-called "redacted confessions").[1] As noted by the Third Circuit:

"The key to *Bruton* was that the extra-judicial statement by the nontestifying codefendant ... was 'powerfully incriminating' ... in that it *named* Bruton as an accomplice. It was in such a circumstance—where the challenged *statement* (and we emphasize, the statement only) directly implicated the complaining defendant Bruton—that the Supreme Court held that the codefendant's statement could not be admitted into evidence at a joint trial."

*United States v. Belle,* 593 F.2d 487, 493 (3rd Cir. 1979) (citation omitted).

In a fact situation similar to the instant case, *United States v. Stewart,* 579 F.2d 356 (5th Cir. 1978), two individuals were charged with a bank robbery. At trial, the government, through a witness, introduced one defendant's (Ronnie Stewart) statement that he and "his buddy" had robbed a bank. Stewart's co-defendant (Scott) argued that even though he had not been named in the statement, he was clearly implicated because other testimony identified him as being involved in the robbery. Thus, it was Scott's position that the use of his co-defendant's confession violated the *Bruton* rule of law. The Fifth Circuit disagreed, ruling:

"a statement made by one defendant, not inculpatory of a codefendant on its face, is admissible in a joint trial even though other evidence in the case indicates that a codefendant not mentioned [by name] in the statement was also involved in the activities described."

*Id.* at 359. *See also United States v. Holleman,* 575 F.2d 139 (7th Cir. 1978).

As was the case in *Stewart,* here, Best's statement simply revealed that someone else was involved in the kidnaping. The statement did not in any way identify Madison by name, weight, height, facial features, color, sex, gait, hair or any other manner. Therefore, even though other evidence was presented to show that Madison was connected with the kidnaping, the use of Best's confession did not violate the *Bruton* rule. "To hold what was done in the present case to be reversible error would be an extension of *Bruton.* We see no need in these circumstances to further cripple the use of confessions in joint trials." *Holleman,* 575 F.2d at 143. Therefore, in light of the fact that Detective Clifton did not testify that Best identified Madison as the one who was holding the gun and because the

---

1. A "redacted confession" is one which does not directly identify the co-defendant by name, age, sex, race, etc.

detective did not identify Madison in any way, shape or form as being the one named by Best, we hold that the method used in the instant case of introducing a "redacted" form of Best's confession did not violate the *Bruton* rule.

### 2. *Sufficiency of the Evidence*

Madison alleges that the evidence was insufficient to sustain his conviction, beyond a reasonable doubt, of any of the counts contained in the indictment. Count one of the indictment charged Madison and Best with conspiring to kidnap Alana Fahland for the purpose of sexual gratification and to avoid detection by St. Louis, Missouri police officers and Count two charged Madison and Best with the kidnaping itself. Count three charged Madison and Best with knowingly and willfully transporting a stolen vehicle across state lines.

Madison argues that, as to Count one of the indictment (conspiracy), the evidence is insufficient to support a finding of a conspiracy between the parties because there was no evidence that Madison and Best *agreed* between themselves to perform any act. Madison asserts that because he had no control over the stolen car and did not know of its final destination, there is no evidence of an agreement between the parties, or of a scheme or a prior understanding with a common purpose. It is Madison's position that because he did not know of the destination of the automobile and in the absence of evidence of an expressed agreement, discussion, scheme or prior understanding between him (Madison) and Best, that the conviction on the conspiracy charge should be overturned. We disagree.

█ "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Count one of the indictment alleges a conspiracy between the parties. The elements of conspiracy are as follows: (1) an agreement between two or more persons to commit an unlawful act;

(2) the joining of such an agreement by the defendant; and (3) the commission of an overt act in furtherance of the agreement by one of the co-conspirators. *See generally United States v. Hickey,* 360 F.2d 127 (7th Cir. 1966). Madison alleges that there was no formal agreement between Madison and Best to kidnap Alana Fahland and therefore there could be no conspiracy. However, Madison's argument ignores this court's holding in *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969).

> "Agreement is the primary element of a conspiracy. The formalities of an agreement are not necessary and are usually lacking since the mark of a successful conspiracy is secrecy. *The agreement may be shown 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'* "

*Id.* at 741 (emphasis supplied).

█ The record, the evidence, and the totality of the circumstances sustains the jury finding beyond a reasonable doubt that defendant Madison "agreed" with defendant Best to kidnap Alana Fahland, regardless of whether the evidence is viewed in the light most favorable to the government, which it must be. Alana Fahland and Denise Johns each testified that Madison and Best approached the vehicle, walked past it and stopped behind the car to confer with each other. They then returned to the car and struck up a conversation with the two women, offering to sell them some "reefer" and asking for their help in starting a car. Madison then went to the passenger side of the car, and along with Best forced the victims to open their car doors. Madison pursued Denise to the street and threatened to shoot her, but when she refused to come with him he returned to the car and climbed into the rear seat. This clearly establishes concert of action and that Madison and Best were working together and had a common plan. Moreover, during the ride from St. Louis, Missouri to East St. Louis, Illinois, Madison forced the kidnap victim into the back seat and forced her head into his lap so

that she could not see the area she was passing through. This action by Madison was accomplished after Best alerted him to the fact that the victim was attempting to escape. Madison's forcing Alana into the rear seat of the automobile to keep her from escaping demonstrates another "single design for the accomplishment of a common purpose." Indeed, after Best advisedly parked the car in the rear of the building in East St. Louis rather than on the main thoroughfare or open highway, obviously in an attempt to hide Madison's molesting activities, he (Best) cleverly absented himself from the car immediately before and during the acts of molestation perpetrated on Alana Fahland by Madison. This action by Best further supports the jury's finding of another incident of "agreement" and concerted action between Madison and Best. Therefore, the evidence clearly establishes beyond a reasonable doubt that there was more than sufficient concert of action between Madison and Best to prove that they were working together, with a single design for the accomplishment of a common purpose. The evidence is clearly sufficient to uphold a jury finding that there was an agreement between Madison and Best and that a conspiracy existed to kidnap Alana Fahland and transport her across state lines, regardless of whether or not the evidence is viewed in the light most favorable to the government, as is mandated by law.

Madison also challenges the sufficiency of the evidence introduced to prove Count two of the indictment, the kidnaping count. Madison alleges that although his actions were reprehensible, they were insufficient to support his conviction for kidnaping. Madison asserts that there was no evidence to show that he had any control over the operation of the car. Madison argues that he never knew exactly where Best intended to drive the car. Thus, it is Madison's position that the evidence introduced at trial simply demonstrated that he was present during the transportation of Alana Fahland across state lines but that he did not participate in the kidnaping. In applying the evidence adduced at trial to those elements necessary to prove the federal crime of

kidnaping, we hold that Madison's argument is without merit because the evidence against him was overwhelming.

"[T]he elements to be established in the federal kidnaping charge are:

(1) the transportation in interstate commerce

(2) of an unconsenting person who is

(3) held for ransom or reward, or otherwise and

(4) doing such acts knowingly and willfully."

*Hattaway v. United States,* 399 F.2d 431, 433 (5th Cir. 1968).

The evidence introduced by the prosecution demonstrated that Madison actively participated in the kidnaping of Alana Fahland by acting in concert with Best, approaching the car together, conferring at the rear of the car and attempting to trick the women into opening their doors by offering to sell the women some "reefer" and next requesting the women's help in starting a car. When these ploys failed, and Best began hitting Alana on the back of the head with a gun, Madison ran to the other side of the car, forced Denise to open her door, pursued her and attempted to force her to return to the car. Madison further acted in concert with Best in kidnaping Alana by locking the doors of the car, pulling Alana into the back seat, restraining her from leaving the vehicle, forcing her to keep her head down during the transportation and threatening her with a gun, thus aiding in the transportation in interstate commerce of an "unconsenting person." The evidence further established that Madison participated in this kidnaping knowingly and willfully. We hold that the overpowering evidence introduced at trial was more than sufficient to establish Madison's guilt beyond a reasonable doubt, especially when viewed in a light most favorable to the government.

Finally, Madison alleges that the evidence introduced at trial was insufficient to sustain his conviction of willfully and knowingly transporting a stolen motor vehicle from St. Louis, Missouri to East St. Louis, Illi-

nois, in violation of 18 U.S.C. § 2312 (commonly known as the Dyer Act). Madison asserts that the evidence was insufficient because it showed that Madison was only a passenger in the back seat of the automobile and exerted no control or influence over the operation of the car. Therefore, it is Madison's position that he could not be found guilty of "transporting" the stolen vehicle across state lines. However, because the evidence clearly shows that Madison assisted Best in the taking of the car by acting in concert with Best, with one of the defendants at each car door, and jointly forced the women to open the locked car doors, and since Madison further assisted in the transporting of the car on the kidnap/rape journey, we hold Madison's argument is without merit.

In order to establish a violation of 18 U.S.C. § 2312, the prosecution must show that the defendant transported a known stolen vehicle across state lines. *United States v. Gresham,* 585 F.2d 103 (5th Cir. 1978). It is beyond dispute that the vehicle in question was stolen and that the defendant Madison was present and fully aware that the owner was deprived of its use and control at the time of the original seizure. Furthermore, Madison's active participation in concert with Best in forcing Denise Johns to open her door, threatening to shoot Denise and ordering her to return to the car, entering the vehicle and restraining Alana Fahland from escaping clearly shows that Madison assisted in the transportation of the vehicle used in the kidnap/rape escapade and in doing so crossed state lines. Therefore, we hold that the evidence introduced at trial was far more than sufficient to establish beyond a reasonable doubt that Madison violated 18 U.S.C. § 2312.

### 3. *Sentencing*

■ The trial court sentenced Madison to five years on Count one, forty-five years on Count two, and five years on Count three. The sentences on Counts two and three were ordered to be served consecutively and the sentence on Count one to be served concurrently with the sentences on Counts two and three. Madison asserts that the trial court abused its discretion in sentencing him because the sentencing judge considered a dismissed charge of juvenile robbery and a pending charge of burglary when determining the length of Madison's sentence. Because a sentence which is within the statutory limits will not be overturned except upon a showing of abuse of discretion and because our examination of relevant case law reveals that it is well within a trial court's discretion to rely upon presentence reports which contain references to *any* prior criminal record which establishes a propensity toward crime on the part of the defendant, we affirm the decision of the trial court.

■ It is well established in this circuit and elsewhere that:

"The general rule on review of sentences in the federal courts is: once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end, unless the sentencing judge relied on improper or unreliable information in exercising his or her discretion or failed to exercise any discretion at all, in imposing sentence."

*United States v. Main,* 598 F.2d 1086, 1094 (7th Cir. 1979). The maximum statutory terms of imprisonment which may be imposed for Madison's crimes are: Count one (conspiracy) five years; Count two (kidnaping) any term of years or life; Count three (stolen car) five years. Since the sentences imposed upon Madison are within the statutory limits these sentences will not be disturbed unless Madison can show that the sentences resulted from an abuse of discretion on the part of the trial court.

■ Madison alleges that the trial judge abused his discretion when he relied upon a presentence report which contained references to a pending charge against Madison and a charge which had been previously dismissed. Specifically, Madison complains of the following statement by the court:

"The presentence report demonstrates to me that Byron Steven Madison is a young age, cannot point to one redeeming

feature in his background. Apart from the pending charge and to the dismissed charge which I have to view with a different attitude than those he has been convicted, but I think we can still consider it. But it's two burglaries ... that he was convicted on as an adult, robbery as a juvenile and that was dismissed."

Madison argues that the statement "we can still consider them" in reference to the pending and dismissed charges reveals that the sentencing judge relied on improper factors in determining Madison's sentence and thus abused his discretion. Madison ignores the fact that the trial judge used the language "apart from the pending charge," thereby expressing his intent to disregard the pending charge when deciding on the length of Madison's sentence. However, even if the trial court had taken the pending charge into account when sentencing Madison, there would have been no error. This is because the federal rules allow a court to consider the defendant's entire criminal pattern of behavior when determining the defendant's character and propensity toward crime. Knowledge of pending charges does not render a sentence invalid, especially where, as here, the trial judge does not express any opinion or consideration as to the guilt or innocence of the defendant on the pending charge. In light of the judge's duty to protect society and to impose a fair and just sentence upon the defendant it is only reasonable to allow the judge wide latitude in the type of information he can consider when sentencing. Moreover, our review of the federal rules and relevant case law reveals that a trial court may also consider dismissed charges as evidence of character when determining the length of the defendant's sentence. Therefore, because it is well within the discretion of a trial judge to rely upon factors such as the dismissed robbery charge only for purposes of showing a propensity toward criminal behavior, we hold there was no abuse of discretion.

■ Rule 32 of the Federal Rules of Criminal Procedure provides:

"(c) Presentence Investigation.

(2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics ... as may be helpful in imposing sentence or in granting probation ... and such other information as may be required by the court."

Fed.R.Crim.P. 32(c).

In broadly construing this rule, the Supreme Court has held that the presentence report should contain any information which would be helpful in imposing sentence. "Highly relevant—if not essential—to [the trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). Indeed, in a subsequent decision, the Court stated:

"It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, *largely unlimited either as to the kind of information he may consider, or the source from which it may come.*"

*United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (emphasis supplied).

Other courts have ruled that a judge may take into consideration charges which had been previously dismissed when sentencing a defendant. For example, in *United States v. Martinez,* 584 F.2d 749 (5th Cir. 1978), a trial judge, when sentencing the defendant for the possession of cocaine stated he could not disregard the fact that heroin was also found in the defendant's house. The defendant alleged the trial judge erred when he relied upon the dismissed charge of possession of heroin when determining the defendant's sentence. The Fifth Circuit disagreed, ruling:

" 'At a sentencing, a Court can consider many matters that might not be admissible at trial including evidence of crimes for which the defendant has been indicted but not convicted, and evidence of other crimes.' *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977).

1314

The district court did not err in taking notice of the factual basis of the dismissed count in determining sentence. To hold otherwise would be to hold that the circumstances of the other counts' dismissal somehow sanitized the facts upon which they were based, so that the court could consider some but not all of the defendant's life situation in determining a proper individual sentence for him. To be sure, the court could not sentence Martinez on the dismissed counts, and clearly it did not do so."

584 F.2d at 750. *See also United States v. Cifarelli,* 401 F.2d 512 (2nd Cir.), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1978). Therefore, it is clear that the trial judge was correct when he considered the dismissed juvenile robbery charge as indicating Madison's propensity for criminal activity but made no statement as to Madison's guilt or innocence on that charge.

While several courts have found an abuse of discretion by the trial court when sentencing a defendant, these rulings are expressly limited to their "exceptional circumstances." For example, in *Thomas v. United States,* 368 F.2d 941 (5th Cir. 1966), the court held that the trial judge abused his discretion when he imposed a more severe sentence on the defendant because the defendant refused to admit to his guilt. Furthermore, in *United States v. Wiley,* 278 F.2d 500 (7th Cir. 1960), this court found an abuse of discretion when the trial court sentenced one defendant who pleaded not guilty and stood trial to a harsher sentence than his co-defendants who were more deeply involved in the crime but who had pleaded guilty. Both of these courts expressly limited their rulings to the exceptional circumstances of the case. No "exceptional circumstances" exist here. The trial judge relied upon the presentence report prepared by the federal probation department, and this report correctly contained Madison's "criminal record." Indeed, the trial judge expressly stated he was not considering the pending charge and that he viewed the dismissed robbery charge "with a different attitude than those [of which] he has been convicted."

Since this court has previously held that a trial judge may consider even those convictions which were obtained under a statute later held to be unconstitutional, *United States v. Washington,* 586 F.2d 1147 (7th Cir. 1978), we see no abuse of discretion in the trial court's considering the dismissed robbery charge and the pending burglary charge in the manner in which he considered them.

The sentencing stage of the trial is one of the most important parts of the criminal process. In order for a judge to be well advised of all of the facts surrounding the defendant's background, and particularly in view of the judge's obligation to the general public, as well as to the defendant, to be fair, reasonable and just, it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background, from his date of birth up to and including the moment of sentencing. While it is important to the defendant for the judge to know whether the defendant suffered as a battered child from abusive and/or alcoholic parents which could have contributed to his psychological pattern which oft-times manifests itself in violent criminal activity, likewise it is equally important for the presiding judge to know of *all* of the defendant's prior criminal contacts with law enforcement agencies. We are not only concerned with the individual's rights but also with the right of the general public to live free, unafraid and unmolested. Vulnerable members of our society, such as the women in this case and senior citizens, must no longer be forced to live as prisoners in their own homes and vehicles but must be able to enjoy living in a peaceful law abiding society.

While all judges have the obligation to protect individual rights the judge must not lose sight of the common good of all mankind. In order to render justice to all the judge must be able to impress upon a defendant through the expansive contents of an all encompassing presentence report that we are a country of laws and not men. The criminal must learn that with every cherished right he enjoys he also assumes a

corresponding obligation to live according to the law of the land. Our laws are for the protection of all mankind and not just the criminal. Thus, if the defendant has displayed a propensity toward criminal activity over a period of years and has not learned from his past mistakes and transgressions of the law it is important that the judge take these matters into consideration including those cases where the crimes may have been *nolle prosequi* or read into the record and considered by the judge in sentencing the defendant for another crime, but relieving the defendant of a formal judgment of conviction on the particular crimes read into the record. The defendant suggests that the trial court erred in considering the dismissed juvenile charge of robbery. However, the consideration of a defendant's juvenile record is essential, because it is clear that the "magic age" of eighteen, seventeen or sixteen, whatever it may be in a specific state, cannot wipe out all previous contacts with the law. A defendant's juvenile record as well as his record as an adult, a record which contains both convictions and dismissed charges provides the court with evidence of a pattern of criminal behavior which, in turn, is an index of the defendant's character, a critical factor in sentencing when determining a possible potential for rehabilitation.

Therefore, from our review of the record, and in light of the fact that the trial court clearly articulated the reasoning behind his decision in sentencing Madison, we hold that the trial court did not abuse its discretion in taking into consideration all of the charges contained in the presentence report.

Finally, Madison asserts that the trial judge abused his discretion in sentencing Madison to forty-five years on the kidnaping charge because his co-defendant Best was sentenced to only eight years on the kidnaping charge and because other individuals whose attacks on kidnap victims were viewed as "brutal" by the trial court received only slightly higher sentences. However, in light of the rule that the disparity of sentences between co-defendants does not alone prove abuse of discretion, *see*

*United States v. Santiago*, 582 F.2d 1128, 1137 (7th Cir. 1978), and because the forty-five year sentence on the kidnaping charge is well within the statutory maximum and in light of the nature of defendant Madison's sexual attack on the kidnap victim we hold that the trial court did not abuse its discretion in imposing a forty-five year sentence on the charge of kidnaping.

AFFIRMED.