922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rodney BERENS, Douglas Ray Nyenhuis, and Jody Lee Rus,
Defendant-Appellants.
 Nos. 89-2342, 89-2343.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1991.
 
 Before WELLFORD and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, District Judge*.
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Defendants appeal their sentences arising out of a pipe bombing incident in which they caused extensive damage to a car, pickup truck and motor home, and minor damage to a private residence. Counts 4 and 5 of the federal indictment charged defendants with receipt and possession of an unregistered firearm (a pipe bomb) in violation of 26 U.S.C. Sec. 5861(d) which provides:
 
 
 2
 It shall be unlawful for any person--
 
 
 3
 (d) to receive or possess a firearm which is not registered to him in the national firearms registration and transfer record;
 
 
 4
 Defendants pled guilty after discussing the application of the sentencing guidelines with the Assistant United States Attorney. Thereafter, the court utilized Sentencing Guidelines Sec. 2K2.2 to cross-reference to Guideline Sec. 2K1.4, which resulted in a Guideline Range of 33-41 months.[1] Defendant Nyenhuis was sentenced to 36 months and defendant Rus was sentenced to 30 months. On appeal, we AFFIRM the cross-referencing to Guideline Sec. 2K2.4. In reaching this result, however, my analysis differs from that of Judge Holschuh who concurs with me in the majority opinion.
 
 
 5
 Guideline Sec. 2K2.2 contains a "cross-reference" in subsection (c) which directs the court to apply a different section if the defendants used the pipe bombs to commit "another offense". Specifically, the guideline provides:
 
 
 6
 Sec. 2K2.2 Receipt, Possession, or Transportation of Firearms and Other Weapons in Violation of National Firearms Act.
 
 
 7
 (a) Base Offense Level: 12
 
 
 8
 (b) Specific Offense Characteristics
 
 
 9
 (1) If the firearm was stolen or had an altered or obliterated serial number, increase by 1 level.
 
 
 10
 (2) If the firearm was a silencer, increase by 4 levels.
 
 
 11
 (3) If the defendant obtained or possessed the firearm solely for sport, recreation or collection, decrease by 6 levels.
 
 
 12
 (c) Cross Reference
 
 
 13
 (1) If the defendant used the firearm in committing or attempting another offense, apply the guideline for such other offense or Sec. 2X1.1 (Attempt or Conspiracy), if the resulting offense level is higher than that determined above. (Emphasis supplied).
 
 
 14
 The main issue at the sentencing hearing was whether, as the government contended, there was some "other offense" which was appropriate for cross-referencing purposes under Sec. 2K2.2(c)(1). The government argued initially at the October 24, 1989 Sentencing Hearing that defendants' offense should be cross-referenced to 18 U.S.C. Sec. 844(i) which provides in pertinent part:
 
 
 15
 (i) Whoever maliciously damages or destroys or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than 10 years....
 
 
 16
 However, on November 1, 1989, the government altered its position when it filed a Supplemental Report to the Presentence Report which raised the possibility of cross-referencing to a different federal offense, 18 U.S.C. Sec. 844(h). That statute provides in pertinent part:
 
 
 17
 (h) Whoever--
 
 
 18
 (1) uses fire or an explosive to commit any felony which may be prosecuted in a Court of the United States, or
 
 
 19
 (2) carries an explosive during the commission of any felony which may be prosecuted in a Court of the United States,
 
 
 20
 including a felony which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 5 years....
 
 
 21
 On November 15, 1989, the district court accepted the government's second position and cross-referenced to Guideline Sec. 2K1.4[2] based on conduct violative of 18 U.S.C. Sec. 844(h) to sentence defendants. On appeal, the government argues that, even if cross-referencing to Sec. 844(h) was improper, the sentences should be sustained because cross-referencing to Sec. 844(i) would have created the same result. If the lower court reaches the correct legal result for an unstated or even inappropriate reason, the reviewing court need not reverse. Lundy v. Campbell, 888 F.2d 467, 476 (6th Cir.1989) (erroneous evidentiary ruling brought about the correct result but for the wrong reason). Unlike Judge Holschuh, I agree with the government that application of Guideline Sec. 2K1.4 was correct because cross-referencing to Sec. 844(i) would have been proper. As explained in his concurring opinion, Judge Holschuh believes that application of Guideline Sec. 2K1.4 was correct on the view that Guideline Sec. 2K2.1(c) allows cross-referencing to a state offense.
 
 
 22
 The starting point for determining defendants' sentences is Guideline Sec. 2K2.2(c)(1), which allows cross-referencing to other guidelines sections and increased offense levels if defendants "used the firearm in committing or attempting another offense." I agree with defendants' argument that cross-referencing to 18 U.S.C. Sec. 844(h) is impermissible under Sec. 2K2.2(c)(1) because violation of Sec. 844(h) does not constitute "another offense" separate from their violation of 26 U.S.C. Sec. 5681(d). The government argues that Sec. 844(h) constitutes "another offense" because Sec. 5681(d) makes it unlawful to "receive or possess" a firearm. The government therefore concludes that, because the defendants not only received and possessed unregistered pipe bombs, but also carried and used them several weeks later, their offense under Sec. 844(h) is separate and distinct from their offense under Sec. 5861(d).
 
 
 23
 I disagree with the government's analysis because Sec. 844(h) does not prohibit the mere use or carrying of an explosive but, more narrowly, prohibits the use of an explosive to commit any federal felony or the carrying of an explosive during the commission of any federal felony. In this case, although defendants clearly used and carried an explosive, they were not thereby committing any federal felony other than violating 28 U.S.C. Sec. 5861(d). It would be plainly illogical to allow cross-referencing under Guideline Sec. 2K2.2(c)(1) to "another offense" which is, in effect, the same offense for which that Guideline was originally invoked. Furthermore, even if I were to accept the government's position that such circular cross-referencing is permissible, I would be left with the untenable argument that a violation of Sec. 844(h) occurred because defendants "used" an explosive to "receive or possess a firearm" under subsection (1) of Sec. 844(h), or "carried" an explosive during the commission of the felony of "receiving or possessing a firearm" under subsection (2) of Sec. 844(h). I feel constrained to reject such a construction of Sec. 844(h).
 
 
 24
 Nonetheless, I believe that application of Guideline Sec. 2K1.4 was proper through cross-referencing from Guideline Sec. 2K2.2(c)(1) to 18 U.S.C. Sec. 844(i). At the evidentiary hearing prior to the government's abandonment of its position that Sec. 844(i) was the proper cross-reference offense, the government attempted to show that the property damaged by the defendants "affected" interstate commerce. The government showed such an affect by eliciting evidence that the motor vehicles were used to:
 
 
 25
 (a) Travel from Michigan to Yellowstone National Park, and to Colorado, Arizona and California in the United States as well as to Canada; and
 
 
 26
 (b) Drive on interstate highways; and
 
 
 27
 (c) Drive to buy gas, food and other incidentals in various other states while travelling on vacation and to local distributors of such things as coffee and orange juice not grown in Michigan; and
 
 
 28
 (d) Drive to work where the owners held positions that dealt with goods moving in interstate commerce. Given the evidence, I would hold, sua sponte that the government's abandoned position was correct because the motor home, if not the car and pickup truck, was clearly a "vehicle" which was "used" in an activity that "affected interstate commerce" for purposes of Sec. 844(i).
 
 
 29
 Even the defendants conceded that only a de minimus connection between the damaged/destroyed property and interstate commerce is necessary to support a cross-reference under Sec. 844(i). (Defendants' Reply to Government's Response to Presentence Report, page 4). See also United States v. Andrini, 685 F.2d 1094, 1096 (9th Cir.1982). In Russell v. United States, 471 U.S. 858, 862 (1985), the Supreme Court upheld the conviction under Sec. 844(i) of an individual who owned and rented an apartment building after he unsuccessfully attempted to set fire to the building, explaining that "the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home." The language which refers to "additional property that might not fit that description" of business property supports my position that the damage/destruction of the motor home violated Sec. 844(i). At the same time, I recognize that if defendants had caused damage to the private residence alone, a cross-reference to Sec. 844(i) would probably not lie.
 
 
 30
 Likewise, I recognize that Sec. 844(i) might well not apply if defendants had damaged or destroyed only the automible and/or pickup truck, because there is no evidence that the automobile or pickup truck were for business purposes or otherwise affected interstate commerce. In United States v. Monholland, 607 F.2d 1311, 1316 (10th Cir.1979), the Tenth Circuit held that a pickup truck which defendants allegedly conspired to blow up in order to kill a state judge did not affect interstate commerce because it "was not even used on official business," but merely "was used to transfer the judge to and from work." By contrast, in United States v. Michaels, 726 F.2d 1307, 1310 (8th Cir.1984), the Eighth Circuit upheld a conviction for conspiracy to bomb an automobile in violation of Sec. 844(i) because "[t]he government's uncontradicted evidence sufficiently demonstrates that the Cadillac automobile was used by [the owner] to conduct union business" and the owner received a monthly allowance for reimbursement of automobile expenses. In this case, no evidence was introduced concerning the automobile, and the only evidence introduced by the government regarding the pickup truck was that it was used to drive on interstate highways to positions involving goods that moved in interstate commerce.
 
 
 31
 It is not necessary, however, to resolve the question of whether the damage to the private home and destruction of the automobile and pickup truck fall within Sec. 844(i) because defendants also damaged/destroyed a motor home. On the facts of this case, I would conclude that the motor home was the type of "additional property" which does not fit the description of business property, but which nonetheless affects interstate commerce. Russell v. United States, 471 U.S. at 862 (1985). In reaching this conclusion, I have accorded considerable weight to the fact that the motor home is a vehicle specifically suited to interstate travel; that it was in fact used to travel from Michigan to Yellowstone National Park, Colorado, Arizona, California and Canada; and that, pursuant to their travels, the owners of the motor home purchased food, gas and other incidentals in various states. In my opinion, therefore, a cross-reference to Sec. 844(i) would have been proper and, since Guideline Sec. 2K1.4 corresponds to Sec. 844(i), the application of Guideline 2K1.4 was appropriate. For reasons other than these stated in my opinion, Judge Holschuh agrees that the application of Guideline 2K1.4 was appropriate. Because we have reached the same conclusion, albeit for different reasons, defendants' sentences are AFFIRMED.
 
 
 32
 HOLSCHUH, District Judge, concurring in judgment.
 
 I.
 
 33
 A threshold question involves a determination of which offense guideline the trial court should have applied in the first instance. The question arises because during the period from the time of the offense on March 15, 1989 and the sentencing of defendants on November 15, 1989, the applicable guideline in effect at the time of the offense, section 2K2.2, had been amended, effective November 1, 1989. The change in that guideline was not noted by the parties or by the trial court, and the trial court proceeded to apply section 2K2.2 in the form it existed at the time of the offense. Although prior decisions of this court have indicated that the date of the offense controls which guidelines are applicable, United States v. Sailes, 872 F.2d 735, 736 n. 2 (6th Cir.1989); United States v. Smith, 887 F.2d 104, 106 (6th Cir.1989), 18 U.S.C. Sec. 3553 explicitly requires that the sentencing court apply the guidelines "in effect on the date the defendant is sentenced."[1] In order to determine what effect, if any, the change in section 2K2.2 would have if applied in its amended form on the date of sentencing, it is necessary to examine the guideline in effect at the time of the offense and the amendments to that guideline which became effective November 1, 1989.
 
 
 34
 At the time of the offense in question, section 2K2.2 provided:
 
 
 35
 Receipt, Possession, or Transportation of Firearms and Other Weapons in Violation of National Firearms Act
 
 
 36
 (a) Base Offense Level: 12
 
 
 37
 (b) Specific Offense Characteristics
 
 
 38
 (1) If the firearm was stolen or had an altered or obliterated serial number, increase by 1 level.
 
 
 39
 (2) If the firearm was a silencer, increase by 4 levels.
 
 
 40
 (3) If the defendant obtained or possessed the firearm solely for sport, recreation or collection, decrease by 6 levels.
 
 
 41
 (c) Cross Reference
 
 
 42
 (1) If the defendant used the firearm in committing or attempting another offense, apply the guideline for such other offense or Sec. 2X1.1 (Attempt or Conspiracy), if the resulting offense level is higher than that determined above.
 
 
 43
 The Commentary stated that the statutory provisions to which this guideline applied were 26 U.S.C. Sec. 5861(b) through (1). The defendants were convicted of a violation of 26 U.S.C. Sec. 5861(d).
 
 
 44
 The November 1, 1989 amendments deleted sections 2K2.2 and 2K2.3 (Prohibited Transactions in or Shipment of Firearms and Other Weapons) and replaced them with new section 2K2.2 which deals with "Unlawful Trafficking and Other Prohibited Transactions Involving Firearms." The offense of which defendants were convicted, 26 U.S.C. Sec. 5861(d), is not one of the statutory provisions to which the new guideline applied.
 
 
 45
 At the same time, section 2K2.1 "Receipt, Possession, or Transportation of Firearms and Other Dangerous Weapons by Prohibited Persons" was deleted and a new section 2K2.1 "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition" was promulgated. 26 U.S.C. Sec. 5861(d) is one of the statutory provisions covered by the new guideline which reads:
 
 
 46
 Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition
 
 
 47
 (a) Base Offense Level (Apply the greatest):
 
 
 48
 (1) 16, if the defendant is convicted under 18 U.S.C. Sec. 922(o) or 26 U.S.C. Sec. 5861; or
 
 
 49
 (2) 12, if the defendant is convicted under 18 U.S.C. Sec. 922(g), (h), or (n); or if the defendant, at the time of the offense, had been convicted in any court of an offense punishable by imprisonment for a term exceeding one year; or
 
 
 50
 (3) 6, otherwise.
 
 
 51
 (b) Specific Offense Characteristics
 
 
 52
 (1) If the defendant obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection, decrease the offense level determined above to level 6.
 
 
 53
 (2) If the firearm was stolen or had an altered or obliterated serial number, increase by 2 levels.
 
 
 54
 (c) Cross References
 
 
 55
 (1) If the offense involved the distribution of a firearm or possession with intent to distribute, apply Sec. 2K2.2 (Unlawful Trafficking and Other Prohibited Transactions Involving Firearms) if the resulting offense level is greater than that determined above.
 
 
 56
 (2) If the defendant used or possessed the firearm in connection with commission or attempted commission of another offense, apply Sec. 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.
 
 
 57
 Two noteworthy changes appear in the new 2K2.1. First, the base offense level was increased from 12 under the old 2K2.2 to 16 under the new 2K2.1.[2] If there should be no cross-referencing to 2K1.4, then a substantial issue arises as to the constitutionality under the ex post facto clause of applying a higher base offense level and a resulting harsher sentence if the higher base offense level of 2K2.1 would be applied. The government correctly notes, however, that if the cross-reference to 2K1.4 was proper, with a much higher offense level under that guideline, then this issue would be moot.
 
 
 58
 Second, the language of the cross-referencing was changed by the new 2K2.1. The cross-referencing language of old 2K2.2 read:
 
 
 59
 If the defendant used the firearm in committing or attempting to commit another offense, apply the guideline for such other offense or 2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above. (Emphasis added).
 
 
 60
 The cross-referencing language of new 2K2.1 reads:
 
 
 61
 If the defendant used or possessed the firearm in connection with commission or attempted commission of another offense, apply Sec. 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.
 
 
 62
 While the former language was in the disjunctive--apply the guideline for the other offense or 2X1.1--the new language of the cross-referencing provision directs that 2X1.1 be applied.
 
 
 63
 It is my conclusion that the trial court should have applied the new 2K2.1 which was in effect at the time of the sentencing, unless such application would have resulted in a harsher sentence and raised the ex post facto issue. For the reasons stated hereafter, I believe the trial court properly applied the cross-reference to 2K1.4, the arson guideline, and, consequently, no ex post facto question was raised by the increase of the base offense level from 12 to 16. I am, therefore, in agreement with Judge Suhrheinrich that the judgments of the district court should be affirmed, but I am unable to agree with Judge Suhrheinrich regarding the reasons he has advanced for the affirmance.
 
 II.
 
 64
 If, in applying the cross-reference of former 2K2.2 or the new 2K2.1, a trial court is limited to a determination of whether another federal offense had been committed, there is a substantial doubt that such an offense was committed in this case. The search in the trial court for that federal offense centered on 18 U.S.C. Sec. 844, and the record demonstrates the difficulty encountered by the government and by the district court in trying to decide whether section 844(h) or section 844(i) or, as defendants contended, neither section fits the facts of this particular case. The trial judge settled on section 844(h), but, as Judge Suhrheinrich correctly points out, this section prohibits the use of an explosive to commit a federal felony or the carrying of an explosive during the commission of a federal felony. For the reasons stated by Judge Suhrheinrich, I agree that section 844(h) is not applicable to the facts of this case. I also conclude, however, contrary to Judge Suhrheinrich's opinion, that the judgment below should not be affirmed on the basis that the defendants committed the offense described in section 844(i), and I reach this conclusion for three reasons.
 
 
 65
 First, it is clear from the record that in the trial court the government expressly abandoned any claim that the defendants committed the offenses described in section 844(i).[3] The application of section 844(i) depends upon whether the destroyed or damaged property was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," and the government apparently concedes that the property in question was not so used. During the course of the oral argument in this court, counsel for the government stated that "[f]rankly, the interstate arson must be commercial arson, it can't be a house.... The [trial] court may have been incredulous when the government was trying to argue that noncommercial arson is a federal offense. It isn't. It [the government] shouldn't have been arguing it. It was trying to convince the court of something that was incorrect.... The government abandoned it...." Given the government's abandonment of any claim that defendant violated section 844(i), I believe the defendants are entitled to rely in this appeal upon the government's position regarding this question.
 
 
 66
 Second, because the question of whether the property was used in interstate commerce or in any activity affecting interstate commerce does involve questions of fact and factual findings not made by the trial court, I do not believe this court should make those findings for the first time. While the abandonment of its claim would not prevent the trial judge, who has the ultimate responsibility of applying the guidelines, from making a determination that the property was so used and that section 844(i) is applicable, such a determination should be made by the trial judge who held the evidentiary hearing. In this respect, I agree with Judge Wellford's reasoning in his dissenting opinion.
 
 
 67
 Third, even if this Court were to make the factual findings suggested by Judge Suhrheinrich, i.e., the motor home is a vehicle specifically suited to interstate travel; it was in fact used to travel from Michigan to Yellowstone National Park, Colorado, Arizona, California and Canada; and pursuant to their travels, the owners of the motor home purchased food, gas and other incidentals in various states, I do not believe that these findings would be sufficient to establish that the vehicle was "used in interstate or foreign commerce" or was used "in any activity affecting interstate or foreign commerce" within the meaning of section 844(i).
 
 
 68
 The legislative history of section 844(i) was described by the Supreme Court in Russell v. United States, 471 U.S. 858, 860-62 (1985) as follows:
 
 
 69
 The legislative history indicates that Congress intended to exercise its full power to protect "business property." Moreover, after considering whether the bill as originally introduced would cover bombings of police stations or churches, the bill was revised to eliminate the words "for business purposes" from the description of covered property. Even after that change, however, the final Report on the bill emphasized the "very broad" coverage of "substantially all business property." In the floor debates on the final bill, although it was recognized that the coverage of the bill was extremely broad, the Committee Chairman, Representative Celler, expressed the opinion that "the mere bombing of a private home even under this bill would not be covered because of the question whether the Congress would have the authority under the Constitution." In sum, the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home.
 
 
 70
 Russell involved the attempt to set fire to an apartment building, and the Court recognized that "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." Id. at 862. The Court had no difficulty in finding that the apartment building involved was used in an activity affecting commerce within the meaning of section 844(i). Id.
 
 
 71
 A number of other cases have also applied section 844(i) to various forms of business property. United States v. Keen, 508 F.2d 986 (9th Cir.1974), cert. denied, 421 U.S. 929 (1975) (commercial fishing boat); United States v. Corbo, 555 F.2d 1279 (5th Cir.), cert. denied, 434 U.S. 928 (1977) (bookstore); United States v. Schwanke, 598 F.2d 575 (10th Cir.1979) (cafe); United States v. Barton, 647 F.2d 224 (2d Cir.), cert. denied, 454 U.S. 857 (1981) (gambling casino); United States v. Sweet, 548 F.2d 198 (7th Cir.), cert. denied, 430 U.S. 969 (1977) (tavern); United States v. Andrini, 685 F.2d 1094 (9th Cir.1982) (office building under construction); United States v. Nashawaty, 571 F.2d 71 (1st Cir.1978) (paint shop).
 
 
 72
 In contrast, it has been held that the bombing of a private residence was not within the scope of section 844(i), because the residence is clearly not used in interstate commerce nor is it used in an activity affecting interstate commerce. United States v. Mennuti, 639 F.2d 107 (2d Cir.1981). As the court said in Mennuti, 639 F.2d at 113:
 
 
 73
 We are not holding that Congress could not, with appropriate findings and language, make it a federal crime to do what appellees were charged with doing here. We hold only that Congress did not choose, as the Government contends, to make nearly every bombing in the country a federal offense; it limited its reach to property currently used in commerce or in an activity affecting it, leaving other cases to enforcement by the states.
 
 
 74
 In cases involving motor vehicles, the distinction between commercial use and private use has also been drawn. In United States v. Monholland, 607 F.2d 1311 (10th Cir.1979), a conspiracy to bomb a pickup truck of a state court judge was held to be outside the scope of section 844(i). The judge's use of the vehicle to go to his work at the courthouse was not deemed to be using the vehicle in interstate commerce or in an activity affecting interstate commerce. Id. at 1316. Where, however, a vehicle is used in some business activity that affects interstate commerce, the statute has been held applicable. See, e.g. United States v. Metzger, 778 F.2d 1195 (6th Cir.1985) (vehicle used to transport goods to be sold in a business involved in interstate commerce); United States v. Michaels, 726 F.2d 1307 (8th Cir.1984) (vehicle used to conduct union business affecting interstate commerce).
 
 
 75
 In the present case, the defendants' use of the pipe bomb damaged a car, a pickup truck, a motor home, and a private residence. Judge Suhrheinrich suggests, and I would agree, that a violation of section 844(i) could not be predicated upon the damage caused to the private residence, or the pickup truck, on the basis of the evidence presently in the record. I believe the same would be true with respect to the damage to the car. Therefore, the focus is on the damage to the motor home, and the pertinent issue is whether the motor home is used in interstate commerce or in an activity affecting interstate commerce within the meaning of section 844(i). On this particular issue Judge Suhrheinrich concludes, referring to the language in Russell, that "the motor home was the type of 'additional property' which does not fit the description of business property, but which nonetheless affects interstate commerce." (Opinion, p. 9). It is here that I respectfully disagree.
 
 
 76
 To come within the ambit of section 844(i) it must be shown that the property was either used in interstate commerce or used in an activity affecting interstate commerce. The motor home, so far as we can tell from the record, was a privately owned vehicle used for personal pleasure. In my view, an occasional trip to Yellowstone National park or to other places outside Michigan involving the crossing of state lines does not mean that it was a vehicle "used in interstate or foreign commerce" or in an "activity affecting interstate or foreign commerce." Under Judge Suhrheinrich's construction, virtually every privately owned automobile in the United States that ever crossed a state line at some time or another, even for solely personal reasons, would fall within the coverage of the statute. Considering the legislative history of the statute as examined in Russell, and even according it the broad scope intended by Congress, I conclude that the motor home in question would not be within the coverage of section 844(i). As noted earlier, the government, on oral argument, conceded that the damage to the residence and to the motor vehicles, including the motor home, would not have constituted the type of arson proscribed by section 844(i).
 
 
 77
 For the foregoing reasons, I conclude that the record would not support a finding that defendants committed the offense described in section 844(i). Since section 844(h) is also not applicable, there is no federal offense in this case to support a cross reference under section 2K2.1(c). If, then, the search for "another offense" referred to in former section 2K2.2(c) and present 2K2.1(c) is limited to a search for another federal offense, I do not believe that cross-referencing would be appropriate. In my opinion, however, the search is not so limited.
 
 III.
 
 78
 An inquiry concerning the application of the cross-reference in section 2K2.1(c) must start with the relevant conduct guideline. Section 1B1.3 provides, in part, that cross-references in Chapter Two shall be determined on the basis of all acts committed or aided and abetted by the defendant that occurred during the offense of conviction. The sentencing court must consider all harm or risk of harm that resulted from such conduct, if the harm or risk was caused intentionally, recklessly or by criminal negligence, and all harm or risk that was the object of such conduct. It is very clear that conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. Thus, the requirement in section 2K2.1(c) that if the defendant used the explosive device to commit "another offense" the court must apply 2X1.1 in respect to that other offense if the resulting offense level is higher than the base offense level for mere possession of the device is perfectly consistent with the concept of relevant conduct set forth in section 1B1.3.
 
 
 79
 In my view, in determining what other "offense" a defendant has committed, for purposes of cross-referencing under section 2K2.1(c), the sentencing court is not confined to a review of federal offenses. The parties and the trial court, however, embarked on a tortuous attempt to find the commission of a federal offense and concentrated their efforts initially on 18 U.S.C. Sec. 844(i) and eventually on section 844(h). There is, however, nothing in the concept of relevant conduct, embodied in section 1B1.3, or in the cross-reference of section 2K2.1(c) that requires such a limitation. In fact, the commentary to 2K2.1 provides, in part:
 
 
 80
 The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. Such prosecutions result in high sentences because of the true nature of the underlying conduct. The cross references at Sec. 2K2.1(c) deals with such cases.
 
 
 81
 In the present case the defendants were convicted of unlawfully receiving and possessing pipe bombs. They used the pipe bombs to damage a car, a pickup truck, a motor home and a residence. Their use of the fire bombs was clearly relevant conduct that should have been considered in determining an appropriate sentence under the guidelines, and the cross reference of section 2K2.1(c) required the sentencing court to do that. Although the use of the fire bombs may not have been a federal offense under 18 U.S.C. Sec. 844(h) or 844(i), it was undeniably a state law offense[4] which can and should be considered in applying the cross reference of section 2K2.1(c). As this Court recently said in United States v. Bronaugh, 895 F.2d 247, 251 (6th Cir.1990).
 
 
 82
 It may be thought anomalous that a defendant can receive a five-fold increase in his sentence because a preponderance of the evidence indicates he is guilty of an uncharged crime. But such increases are possible, under the guidelines, not only where the crime is uncharged, but where the other crime does not even come within the jurisdiction of the federal courts.
 
 
 83
 On the undisputed facts, the defendants used the fire bombs to commit another offense--a state law offense of arson--and the only remaining step for the trial court to take was to apply the cross-reference of section 2K2.1(c).
 
 IV.
 
 84
 The cross-reference of 2K2.1(c) required that the trial court apply 2X1.1 (Attempt, Solicitation or Conspiracy) in relation to the other offense. The pertinent provision of 2X1.1 reads:
 
 
 85
 (a) Base Offense Level: The base offense level from the guideline for the object offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.
 
 
 86
 The object offense, a state law offense, is not specifically covered by the guidelines, but as the Application Notes to 2X1.1 point out, if the object offense is not covered by a specific guideline, the Court is referred to 2X5.1. Section 2X5.1 provides that if the offense is a felony offense for which no guideline expressly has been promulgated, the trial court must apply "the most analogous guideline." In this case, the most analogous guideline was clearly 2K1.4 (Arson: Property Damage By Use of Explosives). Although the base offense level under that guideline was 6, the adjustments required that it be increased by 14 levels if a defendant recklessly endangered the safety of another person. The trial court made this finding and it has not been disputed. The trial court increased defendant Nyenhuis' level by two by reason of his being the organizer of the criminal activity (section 3B1.1) and decreased it by two for his acceptance of responsibility (section 3E1.1), resulting in a total offense level of twenty. With a criminal history category of I, the imprisonment range was 33 to 41 months. The trial court similarly cross referenced to section 2K1.4 in sentencing defendant Rus but did not increase by two levels for being an organizer. The result was a total offense level of eighteen. With a criminal history category of I, the imprisonment range for defendant Rus was 27 to 33 months.
 
 
 87
 Defendant Nyenhuis was sentenced to 36 months, within the guideline range, and defendant Rus was sentenced to 30 months, also within his guideline range.
 
 
 88
 Although this analysis was not used by the trial court, I agree with Judge Suhrheinrich that if the trial court reached the correct legal result for an unstated or even inappropriate reason, the reviewing court need not reverse. The result I have reached is not dependent on the resolution of any factual issues concerning the interstate commerce requirement of 18 U.S.C. Sec. 844(i). It is instead a result reached by applying the guidelines to undisputed facts, and, consequently, remand is not required. I therefore concur in the judgment to affirm the sentences imposed by the trial court in this case.
 
 WELLFORD, Circuit Judge, dissenting:
 
 89
 I am in accord with Judge Holschuh that the judgment on appeal should not be affirmed on the basis of our decision that defendants committed a Sec. 844(i) offense. The government did not rely on any contention that Sec. 844(i) was violated at the sentencing hearing, and if such a violation were to be considered, upon reflection, as a basis for punishment, the proper course would be to remand to the district court for a further hearing with a full opportunity for the parties to address that question.
 
 
 90
 I am also in agreement that the district court must sentence with respect to this offense in accordance with the guidelines "in effect on the date the defendant is sentenced." 18 U.S.C. Sec. 3553(a)(4) and (5). I agree also that 26 U.S.C. Sec. 5861(d), under which defendants were convicted, was not a statute to which the newly amended guideline Sec. 2K2.3 applied.
 
 
 91
 I would remand, under the circumstances, to the district court for resentencing rather than attempt sua sponte to deal with guideline concepts not considered by the district court. In sentencing Nyenhuis, the district court stated:
 
 
 92
 THE COURT: All right. Well, I--first of all, with respect to the range and the alleged surprise by the defendants, the guidelines are new to the Court, they're new to defense counsel, they're new to the U.S. Attorney's Office, and at the time that a plea is entered, the Court at least doesn't have all of the information that later becomes available to the Court. The way the Court's going to interpret the guidelines, obviously the defense counsel and the defendant isn't going to know that until the time of sentencing. I believe at the time of the plea I advised defendants that if the sentence should turn out to be more severe than they anticipated, that that was no basis for withdrawing the plea.
 
 
 93
 .............................................................
 
 
 94
 ...................
 
 
 95
 * * *
 
 
 96
 I'm satisfied that the original base level of 12 for offenses involved, being receipt and possession of firearms, then with a cross-reference noted in 2K2.2(c) referencing a violation of Section 844(h), it's a base offense level of 6, and I'm satisfied that Mr. Nyenhuis's leadership and involvement in this offense, that he recklessly endangered the safety of others, under 2K1.4(b)(2) requires a 14-level increase.
 
 
 97
 .............................................................
 
 
 98
 ...................
 
 
 99
 * * *
 
 
 100
 ... He asked Mr. Rus for assistance, and I'm satisfied that he qualifies for an increase of two levels to bring an adjusted offense level of 22. At the same time I'm willing to recognize his acceptance of personal responsibility, reducing it by 2, bringing it to a total offense level of 20. And under the guidelines, that range is 33 to 41 months....
 
 
 101
 In sentencing Rus, the district court stated:
 
 
 102
 Well, perhaps I should state on the record Mr. Valentine [counsel for Rus], that I have concluded that the initial base offense level is 6, arriving at that from 2K2.2 of the guidelines, which, as you know, reflects a base offense level of 12. There's a cross-reference, 2K2.2(c) of the guidelines, which references then Section 844(h), bringing the base offense level up to 6. I'm satisfied that Mr. Rus's involvement recklessly endangered the safety of another, increasing that to 14, to an adjusted offense level of 20, and I've reduced that by 2 due to your client's acceptance of responsibility, making the total offense level 18, and 18 is a guideline range of 27 to 33 months.
 
 
 103
 The district court considered cross-referencing under Sec. 844(h) not under Sec. 844(i). The probation officer recommended cross-referencing under Sec. 844(i) which requires an interstate commerce nexus. The district court made no finding at all on that question, and defendants have had no real opportunity to address this before the sentencing judge. I respectfully, therefore, disagree with the other panel members that we, on our own volition, should investigate the application of Sec. 844(i) and make a finding that the bombed motor home was a type of "other property ... used in interstate ... commerce." The district court also should be the one first to address any ex post facto problem.
 
 
 104
 I would, therefore, remand to the district court for further findings and for reconsideration of sentencing.
 
 
 
 *
 The Honorable John D. Holschuh, U.S. District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Defendants claim that, based on discussions with the government, they believed that their guilty pleas would result in application of Sentencing Guideline 2K2.2 and a sentencing range of 6 to 12 months for each defendant. This belief was apparently due to the fact that defendants' counsel failed to consider the cross-referencing provision of 2K2.2(c) which allows imposition of other guidelines, resulting in lower sentences. Defendants argued to the trial court that, due to their ignorance of the cross-referencing possibility, their sentencing via cross-referencing was a violation of the plea agreement. The trial court rejected this argument on the basis that the government had made no recommendation in the plea agreement as to what sentence defendants should receive. The defendants' claim that cross-referencing violated the plea agreement has been abandoned on appeal and we therefore do not consider it
 
 
 [2]
 Guideline Sec. 2K1.4 provides:
 Arson; Property Damage by Use of Explosives (Effective November 1, 1989)
 (a) Basic Offense Level: 6
 (b) Specific Offense Characteristic
 If more than one applies, use the greatest:
 (1) If the defendant knowingly created a substantial risk of death or serious bodily injury, increase by 18 levels.
 (2) If the defendant recklessly endangered the safety of another, increase by 14 levels.
 (3) If the offense involved destruction or attempted destruction of a residence, increase by 12 levels.
 (4) If the defendant used fire or an explosive to commit another offense that is a felony under federal law, or carried explosives during the commission of any offense that is a felony under federal law (i.e., the defendant is convicted under 18 U.S.C. Sec. 844(h)), increase by 7 levels.
 (5) If the defendant endangered the safety of another person, increase by 4 levels.
 (6) If a destructive device was used, increase by 2 levels.
 (c) Cross References
 (1) If the defendant caused death, or intended to cause bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person), if the resulting offense level is greater than that determined above.
 (2) Apply Sec. 2B1.3 (Property Damage or Destruction) if the resulting offense level is greater than that determined above.
 (d) Note
 (1) The specific offense characteristic in subsection (b)(4) applies only in the case of an offense committed prior to November 18, 1988.
 
 
 [1]
 18 U.S.C. Sec. 3553 provides, in pertinent part:
 (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
 * * *
 (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;
 (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced.
 (Emphasis added).
 Other courts have held that the guidelines in effect on the date of sentencing apply. United States v. Ciancsewski, 894 F.2d 74, 77 n. 6 (3d Cir.1990); United States v. Restrepo, 883 F.2d 781, 783 n. 6 (9th Cir.1989); United States v. Woolford, 896 F.2d 99, 102-03 n. 4 (5th Cir.1990).
 
 
 [2]
 By an amendment effective November 1, 1990, the base offense level under 2K2.1(a)(1) was increased from 16 to 18
 
 
 [3]
 In the trial court the government said:
 The United States Attorney's Office had, in response to the probation agent's initial cross-reference to 18 U.S.C. Sec. 844(f), identified 844(i) as an appropriate cross-reference and submitted a brief in support of that position. The court has expressed difficulty in accepting the position of the government that the "affect" on interstate commerce from the "use" of the property destroyed is proven. The government maintains that no such impediment exists to the application of 18 U.S.C. Sec. 844(h), however, and therefore abandons its 844(i) analysis.
 (Emphasis added). Government's Supplemental Response to Presentence Report, Joint Appendix, p. 15.
 
 
 [4]
 Although arson of a private residence is not a federal offense, it is a felony offense under Michigan law. Mich.Comp.Laws Ann. Sec. 750.72 (West 1990)